Brian KELLY, Petitioner-Appellant,

v.

IOWA DEPARTMENT OF JOB SER-
VICE and St. Ansgar Community
School District, Respondents-Appellees.

No. 85-711.

Court of Appeals of Iowa.

Feb. 26, 1986.

Evelyn Ocheltree of Legal Services
Corp., Mason City, for petitioner-appellant.

Walter F. Maley, Blair H. Dewey, and Joseph L. Bervid, Des Moines, for respondent-appellee Iowa Dept. of Job Service.

Brian H. McKinley, of Dunkelberg, McKinley & Folkers, Osage, for respondent-appellee St. Ansgar Community School Dist.

Considered by OXBERGER, C.J., and DONIELSON and SNELL, JJ.

SNELL, Judge.

Petitioner Brian Kelly was a custodian for the St. Ansgar Community School District from August 7, 1978 until he was fired on March 8, 1983. On March 9, Superintendent Delbert Jensen gave Kelly a letter that stated that the reason for his termination was neglect of his work. Jensen testified that the incident which triggered the discharge was Kelly's failure to adequately clean the school's stage. Jensen admitted that the stage had been swept. However, Jensen stated that it was not cleaned enough because dust remained on it the next morning. Kelly testified that he had picked up papers over the whole area and then dustmopped and mopped the stage. He stated that he did the best job that he could possibly do. He had to clean around some machinery and weight machines on the stage that were too heavy to move. Kelly's co-worker, Tom Schmidtke, testified that he saw Kelly sweep the stage and he did not see anything wrong with it.

Jensen testified that Kelly had been placed on probation twice for poor job performance before his termination—once in 1979 and once in late 1982. Jensen stated that Kelly had also been warned orally and in writing about his job performance on other occasions, and was informed that if his performance did not improve he could be terminated.

Kelly testified that because Jensen did not have the authority to fire Kelly himself, Jensen had to ask the school board to do so. Kelly and his wife attended the school board meeting where his termination was discussed. According to the undisputed testimony of Kelly and his wife, the school board found that Kelly had not committed misconduct and that there was no reason to fire him because of his job performance. However, the school board went along with Jensen's recommendation to terminate because of the continuous personality conflict between Jensen and Kelly. Jensen stated to the board that he wouldn't even try to work with Kelly.

Kelly filed for unemployment benefits following his termination. A claims deputy decision dated March 25, 1983, held that misconduct had not been proven and benefits were allowed. The school district appealed and a telephone hearing was held on April 21, 1983. The hearing officer reversed, finding that Kelly experienced numerous problems complying with job performance standards during his period of employment. The hearing officer further found that Kelly had been placed on probation on two occasions and had been warned about his job performance on several occasions. The hearing officer concluded that Kelly "was discharged from his position due to poor job performance and [Kelly] had the ability and capability of doing the work in question, thus, [Kelly's] actions indicate a willful and deliberate act on his part so as to constitute misconduct within the meaning of the Iowa law." The hearing officer's denial of benefits on the ground of misconduct was upheld by a 2–1 majority of the appeal board.

Kelly filed a petition for judicial review; the district court affirmed Job Service by concluding that the record contained substantial evidence supporting the agency decision. On appeal, Kelly again contends that the record does not support the agency's finding that he deliberately and willfully failed to do his job.

█ Our scope of review in cases arising out of the Iowa Administrative Procedure Act is limited to the correction of errors of law. *Budding v. Iowa Dept. of Job Service*, 337 N.W.2d 219, 221 (Iowa Ct.App.1983). We review the decision of the district court, also rendered in an appellate capacity, and determine whether the district court correctly applied the law. *Endicott v. Iowa*

*Dept. of Job Service,* 367 N.W.2d 300, 302 (Iowa Ct.App.1985). "In order to make that determination, this court applies the standards of section 17A.19(8) to the agency action to determine whether this court's conclusions are the same as those of the district court." *Jackson County Public Hospital v. Public Employment Relations Bd.,* 280 N.W.2d 426, 429–30 (Iowa 1979). Iowa Code section 17A.19(8) provides that in a contested case the court shall grant relief from an agency decision which is unsupported by substantial evidence in the record made before the agency when that record is viewed as a whole. Evidence is substantial when a reasonable person would accept it as adequate to reach a conclusion. *Gipson v. Iowa Dept. of Job Service,* 315 N.W.2d 834, 837 (Iowa Ct.App. 1981). We do not question the school board's right to terminate Kelly's employment. Our sole task is to determine whether Kelly is entitled to unemployment benefits. *Billingsley v. Iowa Dept. of Job Service,* 338 N.W.2d 538, 540 (Iowa Ct.App. 1983).

Iowa Code section 96.5(2) provides that an individual is disqualified for unemployment benefits if Job Service finds that the individual has been discharged for misconduct in connection with the individual's employment.

The Iowa Administrative Code defines "misconduct" as:

[A] deliberate act or omission by a worker which constitutes a material breach of the duties and obligations arising out of such worker's contract of employment. Misconduct as the term is used in the disqualification provision as being limited to conduct evincing such willful or wanton disregard of an employer's interest as is found in deliberate violation or disregard of standards of behavior which the employer has the right to expect of employees, or in carelessness or negligence of such degree of recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's

duties and obligations to the employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed misconduct within the meaning of the statute.

370 Iowa Admin.Code § 4.32(1)(a). This definition has been accepted by the Iowa Supreme Court as accurately reflecting the intent of the legislature. *Huntoon v. Iowa Dept. of Job Service,* 275 N.W.2d 445, 448 (Iowa 1979) *cert. den.,* 444 U.S. 852, 100 S.Ct. 105, 62 L.Ed.2d 68 (1979). The employer has the burden of proving misconduct. 370 Iowa Admin.Code § 4.32(4); *Billingsley,* 338 N.W.2d at 540.

In order to establish misconduct that will disqualify an employee from benefits, the employer must prove conduct by the employee consisted of deliberate acts or omissions or evinced such carelessness as to indicate a wrongful intent. *Billingsley,* 338 N.W.2d at 540. The misconduct, in order to support a disqualification from unemployment benefits, must be substantial. *Newman v. Iowa Dept. of Job Service,* 351 N.W.2d 806, 808 (Iowa Ct.App. 1984); *Budding,* 337 N.W.2d at 222. "Misconduct serious enough to warrant the discharge of an employee is not necessarily serious enough to warrant a denial of benefits." *Newman,* 351 N.W.2d at 808. The focus of the administrative code definition of misconduct is on deliberate, intentional or culpable acts by the employee. *Id.* While the discharge must be based on a current act of misconduct, past acts of misconduct may be considered in determining the magnitude of the current act. 370 Iowa Admin.Code § 4.32(8).

In this case, Kelly was placed on probation twice for poor job performance for incidents occurring about three years apart. The school district claims that Kelly's failure to perform his job in a satisfactory manner after being repeatedly warned evidences carelessness or negligence to such a degree of recurrence as to manifest

a substantial disregard of its interest as Kelly's employer.

The hearing officer accepted as adequate proof of misconduct the conclusion reached by the superintendent. Gilbert Jensen stated that Kelly was capable of doing a good job of cleaning, but didn't do it. "So I have to assume it was intentional." In response to the inquiry whether that was speculation, he said, "Well, I don't know what other reason there would be, because he was capable of doing it."

Contrasted to the subjective judgment by the superintendent that this demonstrates misconduct is the evidence of harassment experienced by Kelly. He and another witness testified to Kelly's frequent altercations with the head custodian, Ed Fox. Fox told Kelly he could push people around and get away with it. He demonstrated by shoving Kelly into a sink, which caused a bloody gash in his back. He criticized his clothes, his appearance, the way he looked and acted. At one point, he called Kelly "his personal nigger and said I should just ask how far to jump and not ask why to jump."

■ We believe that the school district has failed to show that Kelly's actions which resulted in his discharge amounted to misconduct within the meaning of Iowa Code section 96.5(2). There is no question that Kelly performed his job duty of cleaning the school stage. Problems arose because Kelly did not clean the stage to the satisfaction of his employer. There is no showing in the record of overt disregard of his employer's interest nor that his error occurred in other than his good faith attempt to perform the responsibilities of his job. Kelly testified that he did not intentionally fail to perform his job in a satisfactory manner. There was no evidence presented of any statements or actions by Kelly which demonstrated a wrongful intent on his part. The record discloses only that Kelly was apparently incapable of performing his custodial work to meet the standards required by his employer. We conclude that the record does not contain substantial evidence supporting the agency's claim that Kelly was discharged for misconduct.

■ The hearing officer's reasoning also manifests an error of law. He stated that the record indicates that claimant was not unable or incapable of doing satisfactory work, and thus the actions of claimant constitute a willful and deliberate act of misconduct on his part. The hearing officer accepted as substantive proof the subjective conclusion of the superintendent, Jensen, that since Kelly was a capable worker he must be guilty of misconduct when he failed to perform to Jensen's satisfaction. The superintendent's subjective conclusion, if accepted as substantial proof, would eviscerate the employment security act. Every employer could defeat an unemployment claim by merely testifying that an employee was capable, didn't do the job to the employer's satisfaction, and was therefore guilty of misconduct. The employer's subjective judgment is proof of dissatisfaction but, without more, is not proof of misconduct. It is for the fact finder to determine if the quantum of evidence adds up to a proof of misconduct. The hearing officer should not accept as a given that an employer's subjective standards set the measure of proof necessary to establish misconduct. To do so skews the procedure, forcing the employee to prove that he is not capable or that he had no intent to commit misconduct. The result of the hearing officer's analysis is that the burden of proving misconduct is removed from the employer and shifted to the employee, contrary to law. *See Billingsley*, 338 N.W.2d at 540 (the employer has the burden to prove misconduct).

REVERSED.