John W. LEE, Appellee,

v.

**EMPLOYMENT APPEAL BOARD, Appellant,**

**Mitchell County Secondary Roads, Intervenor–Appellant.**

No. 99–0183.

Supreme Court of Iowa.

Sept. 7, 2000.

Richard Ramsey, Des Moines, for appellant.

Mark L. Walk, County Attorney, for intervenor-appellant.

John S. Allen and Lois K. Cox, University of Iowa Clinical Law Program, and Bridget Butler, Myra Emerson, Tria Lawton–Russell, and Rodney P. Weber, Student Legal Interns, Iowa City, for appellee.

LAVORATO, Justice.

Mitchell County Secondary Roads (county) and the Employment Appeal Board (agency) appealed from a district court decision on judicial review reversing the agency's decision to deny John W. Lee unemployment benefits based on misconduct. The county and the agency contended that the district court erred because there was substantial evidence to support the agency's finding of misconduct. We transferred the case to the court of appeals, which agreed and reversed. We granted further review and now hold that there was no substantial evidence of misconduct. We therefore vacate the court of appeals decision and affirm the district court judgment.

## I. Background Facts and Proceedings.

The county hired Lee on August 30, 1982. His duties included plowing snow and using a dump truck to spread gravel and sand during and after snowstorms.

On December 5, 1991, Mitchell County Engineer James Hyde gave Lee an oral warning about his poor job performance. The written record of the warning mentioned that Lee had experienced a drop in attitude and morale and had damaged property but failed to report the damage. The written record also mentioned that the county had received several public complaints about his snowplowing. The written record concluded that Lee's "job is apparently of little importance" to him and that "[i]mprovements need[ed] to be made in attitude, morale, job performance, initiative, and desire."

On January 26, 1995, Lee received another written warning about his job performance. The warning noted that Lee had "continued to destroy county property" and avoided work assignments. The warning also noted that employees had expressed "concern for their safety working around" Lee as well as their "concern for the safety of the traveling public when [he is] operating heavy equipment on the highway." The warning concluded that Lee continued to "exhibit a poor attitude, lack of respect for county property, low morale, poor job performance, and little or no initiative or desire to perform the task at hand." The warning demanded that Lee improve in these areas or otherwise face possible termination.

Shortly after this warning, the county issued Lee a notice of termination with the understanding that he could return to work if he successfully completed an alcohol treatment program. Lee successfully completed the program.

Later in 1995, Lee hit an overhead electrical wire with a county truck, tearing away one end of the wire from a nearby house. The incident caused damage to the house, and a resulting power surge damaged several household electrical appliances. Apparently, the county issued Lee no warning following this incident. Lee received no warnings between the January 25, 1995 warning and 1998.

Hyde testified that despite the warnings that Lee received he—Hyde—saw no effort on Lee's part to improve his job performance. According to Hyde, Lee's typical response to any comment about his job performance was "get the union in here." Hyde further testified that he saw no concern on Lee's part about his job perfor-

mance nor any effort by Lee to initiate any discussion on how he could improve.

On April 14, 1998, Lee was spreading rock and gravel on a slippery road. At the time, he was driving a county dump truck. He was traveling at the recommended speed limit of twenty miles per hour when he was forced to swerve the truck off to the right side of the road to avoid being hit by an oncoming car. In doing so, Lee hit and broke an overhead utility wire with the box of the truck that he had earlier raised to spread the rock and gravel.

Two days later, Lee, while driving a county dump truck, hit and broke a support wire for an overhead utility line partially hidden by overhanging trees. At the time, Lee was spreading rock at an intersection in a wooded area.

Lee immediately reported both incidents to the county.

On April 21 Hyde met with the county board of supervisors to discuss the two incidents. Shortly after this meeting, Lee was notified that the board had decided to conduct a termination hearing on April 27. Lee attended the hearing with his union representative.

In lieu of termination, Hyde recommended to the board a two-week suspension provided Lee would submit to a physical exam and agree to four drug and alcohol tests per year. The county would pay for one test and Lee would be responsible for the other three. (The union contract provided for only one annual drug test.) Several days later, Lee rejected the offer. Lee testified he rejected the offer because he did not want to pay for three drug and alcohol tests per year.

Thereafter, the county issued Lee a written notice of termination on May 4, 1998. The notice explained that the decision to terminate Lee's employment was "based on Section 4.02 of the current contract which addresses the history of similar and/or past offenses, and Section 4.03(D) gross negligence resulting in willful destruction of property."

Shortly thereafter, Lee applied for unemployment insurance benefits. On May 19, 1998, the Iowa Workforce Development Center determined that Lee was eligible for benefits. The decision determined that the "employer did not furnish sufficient evidence to show misconduct." The county, as intervenor, appealed the decision.

On June 9 an Administrative Law Judge (ALJ) held a hearing at which Lee and Hyde testified. On June 18, in a written decision, the ALJ reversed the earlier decision that had allowed benefits. The ALJ found that the county had established misconduct on the part of Lee. The decision resulted in a disqualification for benefits.

Lee appealed to the Employment Appeal Board, which affirmed the ALJ's decision. Lee petitioned for judicial review in the district court. The district court reversed, concluding that "the Employment Appeal Board erred as a matter of law in finding that Lee's conduct was misconduct for which he could be denied benefits."

## II. Scope of Review.

▆▆▆ The Iowa Administrative Procedure Act, Iowa Code ch. 17A, governs our review of unemployment benefits cases. *See Dico, Inc. v. Iowa Employment Appeal Bd.*, 576 N.W.2d 352, 354 (Iowa 1998). When engaging in judicial review under Iowa Code section 17A.19(8) (1999), a district court acts in an appellate capacity to correct errors of law on the part of an agency. *Holland Bros. Const. v. Board of Tax Review*, 611 N.W.2d 495, 499 (Iowa 2000).

▆▆▆ When this court reviews a district court's judicial review decision, we apply the standards of section 17A.19(8) to the agency action to determine whether our conclusions are the same as those of the district court. Here, the issue concerns whether there was substantial evidence to support the agency's determination of misconduct. Therefore, the standard we apply is whether the agency's decision is supported by substantial

evidence in the record made before the agency when that record is viewed as a whole. *See* Iowa Code § 17A.19(8)(f).

■ We are bound by agency findings of fact that are supported by substantial evidence. *Norland v. Iowa Dep't of Job Serv.*, 412 N.W.2d 904, 913 (Iowa 1987). Evidence is substantial when a reasonable mind could accept it as adequate to reach the same finding. *Id.*

### III. Did Substantial Evidence Support the Agency's Decision That Lee's Actions Constituted Misconduct?

**A. The law regarding misconduct.** Iowa Code section 96.5(2) (1997) provides that a claimant is disqualified from unemployment benefits if the department of workforce development finds that the claimant has been discharged for misconduct in connection with the individual's employment. The Iowa Administrative Code defines misconduct

> as a deliberate act or omission by a worker which constitutes a material breach of the duties and obligations arising out of such worker's contract of employment. Misconduct as the term is used in the disqualification provision [is] limited to conduct evincing such willful or wanton disregard of an employer's interest as is found in deliberate violation or disregard of standards of behavior which the employer has the right to expect of employees, or in carelessness or negligence of such degree of recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to the employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed misconduct within the meaning of the statute.

Iowa Admin. Code r. 871—24.32(1)(a) (1997). We have previously noted that this definition "accurately reflects the intent of the legislature." *Reigelsberger v. Employment Appeal Bd.*, 500 N.W.2d 64, 66 (Iowa 1993).

The employer bears the burden of proving a claimant is disqualified for benefits because of misconduct. *Id.*; *see* Iowa Code § 96.6(2) ("The employer has the burden of proving that the claimant is disqualified for benefits pursuant to section 96.5.").

■ " 'Misconduct must be substantial in order to justify a denial of unemployment benefits. Misconduct serious enough to warrant the discharge of an employee is not necessarily serious enough to warrant a denial of benefits.' " *Reigelsberger*, 500 N.W.2d at 66 (quoting *Breithaupt v. Employment Appeal Bd.*, 453 N.W.2d 532, 535 (Iowa App.1990)).

■ Determining whether an employee has committed misconduct is circumscribed by the provisions of Iowa Administrative Code rule 871—24.32(8). The rule provides that

> [w]hile past acts and warnings can be used to determine the magnitude of a current act of misconduct, a discharge for misconduct cannot be based on such past act or acts. The termination of employment must be based on a current act.

Iowa Admin. Code r. 871—24.32(8). Therefore, "[a] termination for misconduct will not justify a denial of unemployment compensation if the termination is based solely on past acts." *Ringland Johnson, Inc. v. Hunecke*, 585 N.W.2d 269, 271 (Iowa 1998).

■ The definition of "misconduct" in the administrative code focuses on whether the employee's conduct was deliberate, intentional, or culpable. *Kelly v. Iowa Dep't of Job Serv.*, 386 N.W.2d 552, 554 (Iowa App.1986); *see also Savage v. Employment Appeal Bd.*, 529 N.W.2d 640, 642

(Iowa App.1995) (noting that misconduct is a deliberate act or omission which requires a showing of a deliberate intention or culpable act by the employee); *Roberts v. Iowa Dep't of Job Serv.*, 356 N.W.2d 218, 222 (Iowa 1984) (noting that misconduct connotes volition). Therefore, whether misconduct has occurred requires proof that the employee acted intentionally; a showing of mere negligence is not enough to constitute misconduct.

### B. Analysis.

■ **1. Negligent acts.** The agency first found that Lee was negligent in the performance of his job duties. In support of this finding, the agency noted that there was (1) no other explanation "for having two accidents of the same type within a three-day period" and (2) no evidence that "Lee was somehow physically or mentally incapable of performing his job duties in a safe and prudent manner." Based on this evidence, the agency jumped to the conclusion that Lee "simply did not care to give enough attention and caution to his responsibilities to perform them well and safely." This leap in reasoning—in the agency's view—satisfied the intentional requirement for misconduct.

There seems to be no dispute that the two accidents in April 1998 precipitated Lee's employment termination. However, there is no record evidence that Lee intentionally or deliberately damaged the utility lines. We conclude as a matter of law that these accidents standing alone do not constitute misconduct.

■ Of course, the definition of misconduct recognizes that multiple negligent acts may amount to misconduct:

> Misconduct ... is ... limited to conduct evincing such willful or wanton disregard of an employer's interest as is found in ... *carelessness or negligence of such degree of recurrence* as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's

interests or of the employee's duties and obligations to the employer.

Iowa Admin. Code r. 871—24.32(1)(a) (emphasis added).

We hold, however, as a matter of law, that under the facts here the property damage in 1991 and three accidents involving electrical wires (two in April 1998 and the one in 1995), even when taken together, do not amount to misconduct. There is no explanation in the record as to the property damage in 1991. The agency therefore made no finding of negligence as to this incident.

The accident in 1995 happened when Lee's dump truck came into contact with an overhead electrical wire. The agency also made no finding that this accident happened because of Lee's negligence. Instead, the agency focused on the two accidents in 1998 and concluded that these accidents happened because Lee was negligent.

One of the 1998 accidents happened when Lee swerved his truck off the road to avoid hitting an oncoming car, and the other happened when Lee hit a power line partially obstructed from view by overhanging tree limbs. The only finding that the agency made to support its conclusion that Lee was negligent was that two accidents of the same nature happened within a three-day period. So, the agency concluded Lee must have been negligent. The fact that two accidents of the same nature happened within a three-day period is speculative at best on the question of negligence.

There is no evidence other than Lee's testimony as to how these accidents happened. Under his testimony, we find, as a matter of law, no negligence. There was no evidence that Lee violated any traffic laws. Additionally, the uncontroverted evidence is that the two accidents were beyond Lee's control. In fact, Lee's action in swerving to miss an oncoming car demonstrates he had his employer's best interests in mind because his evasive action

avoided a potentially serious accident and monetary loss for the employer. In short, there was nothing about these two accidents that would support an inference that Lee "did not care to give enough attention and caution to his responsibilities to perform them well and safely."

We conclude the evidence falls short of establishing "carelessness or negligence of such degree of recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer."

■■■ **2. Failure to improve job performance.** Additionally, the agency found that Lee failed to perform his job to the best level of his ability. This failure, the agency concluded, constituted misconduct. On this point, the agency expressly found as follows:

> The claimant was certainly aware the employer expected a certain standard of performance from him as evidenced from his performance evaluations and the previous incident of possible termination in 1995. For whatever reason, the claimant refused to improve his performance by exercising more caution.... Failure to perform a job to the best level of one's ability is misconduct. *See Sellers v. Employment Appeal Bd.*, 531 N.W.2d 645 (Iowa App. 1995).

The agency's reliance on *Sellers* to support its finding of misconduct is misplaced. In *Sellers,* the claimant was a house painter who was discharged by his employer after thirteen months of employment. *Sellers,* 531 N.W.2d at 645–46. Over this thirteen-month period, the claimant had a history of working slower than he was capable of doing. *Id.* at 647. Each time the claimant received a verbal reprimand from his supervisor, the claimant's work performance would improve. *Id.* However, each improvement was shortly followed by a decline in work performance. *Id.* On the day of his discharge, the claimant applied only one-fourth the amount of paint that should have been applied by an average painter in a workday. *Id.* at 646, 647. This evidence supported a finding that the claimant did not work as fully and completely as he was capable of doing.

The court of appeals concluded there was substantial evidence to support the agency's finding of misconduct. *Sellers,* 531 N.W.2d at 647. Underlying this conclusion was that claimant's failure to perform was so severe that it was objectively measurable (performing one-fourth of the expected work). The permissible inference was therefore that the claimant intentionally disregarded his duty to his employer. The improvement in his work performance after each warning amply demonstrated that the claimant was capable of doing better. *Id.* On the day of his discharge, the claimant had no believable explanation for his poor performance.

*Kelly v. Iowa Department of Job Service,* 386 N.W.2d 552 (Iowa App.1986), stands in stark contrast to *Sellers.* In *Kelly,* the claimant, a school custodian, was discharged for "neglect of his work." *Id.* at 553. The triggering event was the claimant's failure to adequately clean the school stage. *Id.* The claimant had been placed on probation twice for poor job performance and had been warned orally and in writing about his job performance on other occasions. *Id.* He was also warned that, if his performance did not improve, he could be terminated. *Id.* The claimant's employer testified that the claimant was capable of doing a good job of cleaning but did not do it. When asked why he thought the claimant's failure to do a good job was intentional, the employer testified: "Well, I don't know what other reason there would be, because he was capable of doing it." *Id.* The agency concluded that the claimant "was discharged from his position due to poor job performance and [the claimant] had the ability and capability of doing the work in question, thus, [claimant's] actions indicate a

willful and deliberate act on his part so as to constitute misconduct within the meaning of Iowa law." *Id.* at 553.

The court of appeals reversed, concluding there was no substantial evidence to support the agency's finding of misconduct. *Id.* at 555. In reversing, the court noted that

> [t]here was no evidence presented of any statements or actions by [the claimant] which demonstrated a wrongful intent on his part. The record discloses only that [the claimant] was apparently incapable of performing his custodial work to meet the standards required by his employer.

*Id.*

The court of appeals further noted that the agency accepted as substantive proof the subjective conclusion of the employer that because the claimant "was a capable worker he must be guilty of misconduct when he failed to perform to [the employer's] satisfaction." *Id.* According to the court, accepting the employer's subjective conclusion as substantial proof "would eviscerate the employment security act." *Id.* Moreover, the court pointed out, "[e]very employer could defeat an unemployment claim by merely testifying that an employee was capable, didn't do the job to the employer's satisfaction, and was therefore guilty of misconduct." *Id.*

Significantly, the court further concluded:

> The employer's subjective judgment is proof of dissatisfaction but, without more, is not proof of misconduct. It is for the fact finder to determine if the quantum of evidence adds up to a proof of misconduct. The hearing officer should not accept as a given that an employer's subjective standards set the measure of proof necessary to establish misconduct. To do so skews the procedure, forcing the employee to prove that he is not capable or that he had no intent to commit misconduct. The result of the hearing officer's analysis is

that the burden of proving misconduct is removed from the employer and shifted to the employee, contrary to law.

*Id.; accord Miller v. Employment Appeal Bd.,* 423 N.W.2d 211, 214 (Iowa App.1988) (holding that employer's judgment that employee's poor work performance constituted misconduct, based on ground that employee was aware of his job expectations and required level of performance, but did not live up to that standard for a three-week period, was not evidence supporting finding that employee's poor work performance constituted "misconduct").

We think *Kelly* and *Miller,* rather than *Sellers,* dictate the result here. The employer testified that Lee had annual job evaluations. The employer further testified that, despite written warnings and the annual job evaluations, *the employer never saw any effort on the part of Lee to improve his job performance.* Based on this testimony, the agency concluded that Lee was aware "the employer expected a certain standard of performance," but "[f]or whatever reason, [Lee] refused to improve his performance." The agency then concluded that "[f]ailure to perform a job to the best level of one's ability is misconduct."

As in *Kelly* and *Miller,* the agency here simply accepted the employer's subjective proof that Lee's failure to live up to the employer's expectation was intentional. The undisputed testimony in this case is that Lee never improved his performance, even after receiving warnings. Therefore, there is no quantifiable or objective evidence that shows Lee was capable of performing at a level better than that at which he usually worked. The employer had the burden to provide this objective evidence. The burden was not on Lee to show he was not capable of working to his employer's satisfaction. Although Lee's conduct might have been unsatisfactory as far as the employer was concerned, such conduct does not amount to misconduct. The last part of the definition of misconduct makes clear that "mere inefficiency,

*unsatisfactory conduct,* failure in good performance as the result of inability or incapacity ... are not to be deemed misconduct." Iowa Admin. Code r. 871—24.32(1)(a) (emphasis added).

In sum, contrary to the conclusion reached by the agency, the mere fact that Lee's performance did not improve is not evidence of an intent not to improve. Such a conclusion can only be drawn if there is first established objective proof that the claimant was actually capable of improved performance. Because there was no such evidence here, substantial evidence of misconduct was lacking.

■ **3. Refusal to accept suspension and undergo drug and alcohol testing.** Additionally, on the issue of Lee's failure to improve his work performance, the agency found that Lee

> could have shown good faith in an attempt to improve by accepting the two-week suspension and the attendant agreement for drug and alcohol testing. His decision not to make this good faith effort is further evidence of the fact he simply did not have sufficient interest in his job to do it well.

We conclude the agency should not have relied on this evidence because Lee was not discharged because he refused to accept a two-week suspension and undergo drug testing four times a year. As the record clearly shows, the employer's reason for discharging Lee was the "history of similar and/or past offenses" under section 4.02 of the union contract and "gross negligence in willful destruction of property" under section 4.03 of that contract. Lee's refusal occurred *after* the last incident that gave rise to the employer's decision to discharge him. Therefore, Lee's refusal had nothing to do with the reason the county discharged him. The employer cannot now rely on such refusal as additional proof of misconduct.

### IV. Disposition.

The district court correctly concluded that the employer had not proved misconduct on the part of Lee. The court of appeals erred in concluding otherwise. We therefore vacate the court of appeals decision. We affirm the district court decision (1) reversing the agency decision and (2) ordering the reimbursement of Lee's unemployment benefits.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

All justices concur except NEUMAN, J., who takes no part.