# IN THE COURT OF APPEALS OF IOWA

No. 15-0154
Filed March 23, 2016

**ELIZABETH H. GREENWELL,**
        Plaintiff-Appellant,

**vs.**

**EMPLOYMENT APPEAL BOARD and
PROFESSIONAL TRANSPORTATION, INC.,**
        Defendants-Appellees.
_____

        Appeal from the Iowa District Court for Polk County, Eliza Ovrom, Judge.


        Elizabeth Greenwell appeals the district court's ruling on judicial review upholding the denial of unemployment benefits upon a finding of misconduct. **REVERSED AND REMANDED WITH DIRECTIONS.**



        Robert C. Oberbillig of the Drake Law School Legal Clinic, and Sterling Wilkins, Kaitlyn J. Ausborn, and Robert L. Myott, Student Legal Interns, Des Moines, for appellant.

        Richard R. Autry of the Employment Appeal Board, Department of Inspections and Appeals, Des Moines, for appellees.


        Heard by Danilson, C.J., and Vogel and Potterfield, JJ.

**DANILSON, Chief Judge.**

Elizabeth Greenwell was discharged from her position at Professional Transportation Inc. (PTI) after backing a company van into a Union Pacific train car. Greenwell was then denied unemployment benefits for "misconduct." Greenwell appeals the district court's ruling on judicial review upholding the denial of benefits.

Two issues were raised by Greenwell. First, Greenwell contends that in denying benefits the agency wrongly considered two other incidents. Second, she maintains the agency wrongfully applied and interpreted the term "misconduct." PTI contends Greenwell's repeated negligence rose to the level of misconduct.

Misconduct must be substantial to justify a denial of unemployment benefits. The agency made no finding that the acts constituted an "intentional and substantial" disregard of the employer's interests. We therefore reverse the district court and remand with directions.

**I. Background Facts and Proceedings.**

Elizabeth Greenwell worked as a full-time hotel van driver for PTI from August 2012 until she was discharged on January 10, 2014. Greenwell's duties involved transporting railroad personnel. Her discharge was based on an incident on January 8, 2014, in which the van she was driving slid into a train car.

Greenwell then sought unemployment benefits. PTI disputed Greenwell was eligible for benefits as she had been "discharged for misconduct in connection with work." PTI remarked the January 8, 2014 incident was the "2nd preventable accident in less than 2 months. She was deemed as a safety risk."

On February 4, 2014, Greenwell received notice from Iowa Workforce Development that she was not eligible for unemployment benefits because she was "discharged from work on 01/10/14, for violation of a known company rule." She appealed that decision.

On March 7, 2014, a telephone hearing was held before an administrative law judge (ALJ). The ALJ stated that issues listed on the hearing notice included whether Greenwell "was laid off, discharged for misconduct in connection with the employment that would disqualify her for benefits or whether she voluntarily quit without good cause attributable to the employer."[1] The ALJ also observed it was the employer's burden to prove the claimant was not eligible for benefits.

PTI submitted no exhibits. Denise Blaylock, the PTI local branch manager, was Greenwell's immediate supervisor. Blaylock testified Greenwell began working for PTI on August 23, 2012. She drove the "hotel van" Sunday through Thursday nights from midnight to 8:00 a.m. transporting railroad employees to and from the railroad yard to hotels. When the ALJ asked how Greenwell's employment came to an end (whether the "company discharged her, laid her off, she quit or something else"), Blaylock eventually stated, "[T]he safety department terminate[d] her which would be over my head so that would be PTI, yes. PTI Safety Department terminated her."

Blaylock testified that on January 8, 2014,

The final event that triggered that decision was she was operating one of the PTI vans which is the larger white van. It seats like five or more people and she was trying to turn around down near a rail track and (inaudible) you know, you got to be careful. Our procedures tell us look before you back so she had a

---

[1] The only claim made by PTI was that Greenwell was discharged for misconduct.

backing incident which is the one they really frown on because a lot of them go on so you really got to get out and look but Elizabeth— this is what she told me. I wasn't there. Stated that when she got—she's (inaudible) some snow and she was trying to back out and the van evidently wasn't going so she, I think she, rocked it back and forth and she said that she gave it a final—she stepped on the gas really hard, give it a final back out. When she did the van, the train kind of set up the hill just a little bit, maybe one or two feet, just kind of up, you know, from the back of the van's bumper and she stepped on—when she floored it the van jumped up and backed into the train and knocked out the assemble on the—I think it's the right, yeah, the right rear on the righthand side in the rear and it just kind of, you know, damaged the van some and PTI back (inaudible) is zero tolerance for hitting a train.

When the ALJ asked if other events factored into the decision to discharge Greenwell, Blaylock stated there was an incident on November 23, 2013, in which Greenwell exited a van with its engine running and while she was outside the vehicle the driverless van ran into a parked vehicle, which then slid on ice and "pushed it into a second car." As a result of this November incident, Greenwell was given a three-day suspension and was required to "go through the safety training again." Blaylock also testified there had been an August 2013 incident where Greenwell had backed into a pole or a post when at a convenience store. This incident had been submitted to the safety department as well, and Greenwell had been told "be careful." Blaylock testified, "It just gets stricter as you go on but that particular incident I don't think she ever have any time off for that particular one there."

On cross-examination, Blaylock acknowledged Greenwell was not informed after the November 2013 incident that she faced termination if she had a similar accident.

The ALJ asked Blaylock if there was anything else she would like to add, to which Blaylock stated:

> Uh, excuse me.  As far as basically Hull Avenue and some of the other places that he was stating, uh, basically the hotel (inaudible) they go over there really often and (inaudible) so far as the date in question of the incident, um, I think we're seeing it kind of made the manager a little upset the one that, my previous manager and then safety.  We all had to go on that conference call was that, uh, when you have an accident you're supposed to call and get a relief van and not transport the crew, which is in our safety training videos that she watched also.  She proceeded to put the crew in the van anyway with their luggage and take a bungee cord and tie the doors together.  And when she did that that added, you know, fuel to the fire because there, there was a second violation.  So I think that kind of, you know, messed it up a little bit when she didn't follow procedure to wait until another relief van come (inaudible) better, you know, so the crew wouldn't have to be transported that way because those, those people will sue us if something happens, if the bungee cord popped or something.  That was just the second thing that kind of added to the accident.  And that's all I have to say on the incident.

Greenwell then testified.  She stated she was informed on January 10 that the reason for her discharge was "that this last accident that happened on the 8th of January at approximate [sic] 3:50 in the morning."  Greenwell's version of the incident differed from that given by Blaylock.  Greenwell explained:

> I dropped the conductor that I had picked up from the train and he looked around and thought that I could back up a little bit and try to tum around.  He was—got out of the van.  He basically went to his train and I tried to back up and because it was totally dark and cold with tons of ice and snow on it.  I was sliding and because we don't have major back up lights I assumed that if I tried to turn around I'd have a better view of what my conditions were so basically I tried to turn around, got stuck and slid on some ice as I was trying to manipulate my way and hit the railroad car.
>     . . . .
>     [Then] . . . basically I continued to, um, drive forward.  There was no, at the time there was no camera to take pictures.  There was no accident report.  There was no nothing.  Here it is four o'clock in the morning and basically from that standpoint, um, I

drove to the UP main yard where it was safe and called—tried to call my boss.

Greenwell testified she did not normally work in that area of the Hull Avenue yard. She also testified there was no one in the van beside herself at the time.

Greenwell was asked about the November 23 incident. She opined, "I must have hit the gearshift that was on the panel as I threw the—my briefcase" into the running van before she went to the office to get paperwork. Greenwell acknowledged she was required to take a drug test immediately and then retake safety training. She also acknowledged the August 2013 incident when she backed into a pipe. She testified about the "get out and look" policy, which required that before backing up in a van, one is to get out and look for obstacles. Greenwell stated it was her understanding that "we are allowed to have crew members if they're outside of the van to be able to spot us where we go." The crew she was transporting was outside the van, but they were distracted and did not warn her of the pole—no damage was done to the van.

The ALJ issued a decision on March 19, 2014, finding:

> The final incident that triggered the discharge occurred on January 8, 2014. On that day, Ms. Greenwell was operating the employer's passenger van when it collided with a stationary train in a train yard. Ms. Greenwell had transported railroad personnel to the train yard. Ms. Greenwell drove the passenger van into an unmarked, unfamiliar area and got stuck. In the course of trying to free the van, the back corner of the passenger van came in contact with the stationary train, causing damage to the van. Ms. Greenwell reported the incident to a supervisor. The employer has a zero tolerance policy for motor vehicle accidents involving contact with a train.
> The final incident that triggered the discharge followed two earlier incidents in which Ms. Greenwell carelessly and/or negligently operated the employer's van. On November 23, 2013, Mr. Greenwell entered a passenger van that was already running and, as she entered, moved the gear shift as she tossed her brief

case inside the cab. Before Ms. Greenwell exited the van shortly thereafter, she did not ensure that the van was in park. The running van was not in park. After Ms. Greenwell exited the van, the van rolled a substantial distance and collided with a personal vehicle. The force of the collision pushed that vehicle into another vehicle nearby. The collision caused damage to the employer's van and to at least one of the personal vehicles. In August 2013, Ms. Greenwell backed the employer's passenger van into a stationary post in a convenience store parking lot.

The ALJ affirmed the earlier denial of unemployment benefits, concluding:

The evidence in the record establishes carelessness and/or negligence in connection with each of the three motor vehicle collisions that factored in the discharge. The three incidents, taken together, establish a pattern and are sufficient to indicate a disregard of the employer's interests. Ms. Greenwell minimizes her responsibility for the collisions, though each resulted from her actions and decisions she made. Based on the evidence in the record and application of the appropriate law, the administrative law judge concludes that Ms. Greenwell was discharged for misconduct.

Greenwell appealed to the Employment Appeal Board, a two-member panel of which upheld the ALJ's decision, adopting it as its own.

Greenwell filed a petition for judicial review in the district court, claiming several errors including that the decision was based on an erroneous interpretation of statutory provisions, was not supported by substantial evidence, and was in violation of an agency rule because it was not based on a current act of misconduct.

The district court ruled it could not find the Board's interpretation of the term misconduct irrational, illogical, or wholly unjustifiable. The court wrote: "Unlike in *Lee*, the agency made a finding that the employee's actions were negligent. There is evidence in the record that she had a series of three

collisions within a six-month period. All could have been avoided if she had been more careful."

The court found substantial evidence in the record to support the finding that the employee acted deliberately. The court noted the ALJ did find a pattern of negligence "sufficient to indicate a disregard of the employer's interests," which the district court found was supported by substantial evidence.

Finally, the court rejected the claim that the discharge was not based on a current act of misconduct.

Greenwell filed a motion to enlarge or amend, asserting the court's ruling rested upon several erroneous statements of fact, and also arguing "two incidents do not construe [sic] misconduct." The court denied the motion, stating:

> There is a factual basis for the court's ruling concerning the January 8, 2014 motor vehicle collision. This was petitioner's third violation of company policy concerning motor vehicle accidents. She had received warnings and safety training prior to the most recent incident.

Greenwell now appeals.

## II. Scope and Standard of Review.

Iowa Code chapter 17A (2013), the Administrative Procedure Act, governs our review of claims concerning unemployment benefits. *Harrison v. Emp't Appeal Bd.*, 659 N.W.2d 581, 586 (Iowa 2003). We review to correct any errors of law that may have occurred at the agency level. *Id.* Section 17A.19(10) provides that a party may successfully challenge an agency decision when the party's substantial rights have been prejudiced because the agency action is unsupported by substantial evidence or is affected by other error of law.

**III. Discussion.**

An employee who is terminated for misconduct is disqualified from receiving unemployment benefits. Iowa Code § 96.5(2)(a); Iowa Admin.Code r. 871–24.32(1)(b) ("Any individual who has been discharged or suspended for misconduct connected with work is disqualified for benefits until the individual has worked in (except in back pay awards) and been paid wages for insured work equal to ten times the individual's weekly benefit amount, provided the individual is otherwise eligible."). Misconduct for this purpose is defined as

> a deliberate act or omission by a worker which constitutes a material breach of the duties and obligations arising out of such worker's contract of employment. Misconduct as the term is used in the disqualification provision as being limited to conduct evincing such willful or wanton disregard of an employer's interest as is found in deliberate violation or disregard of standards of behavior which the employer has the right to expect of employees, or in carelessness or negligence of such degree of recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to the employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed misconduct within the meaning of the statute.

Iowa Admin. Code r. 871–24.32(1)(a). This definition has been held to "accurately reflect[] the intent of the legislature." *Reigelsberger v. Emp't Appeal Bd.*, 500 N.W.2d 64, 66 (Iowa 1993); *accord Lee v. Emp't Appeal Bd.*, 616 N.W.2d 661, 665 (Iowa 2000).

Misconduct "must be substantial" to justify the denial of unemployment benefits. *Lee*, 616 N.W.2d at 665 (citation omitted). "Misconduct serious enough to warrant the discharge of an employee is not necessarily serious enough to

warrant a denial of benefits." *Id.* (citation omitted). In addition, administrative code rule 871-24.32(8) provides, "While past acts and warnings can be used to determine the magnitude of a current act of misconduct, a discharge for misconduct cannot be based on such past act or acts. The termination of employment must be based on a current act."

The employer bears the burden of proving a claimant is disqualified for benefits because of misconduct. Iowa Code § 96.6(2) ("The employer has the burden of proving that the claimant is disqualified for benefits pursuant to section 96.5 . . . ."); *Lee*, 616 N.W.2d at 665.

Greenwell asserts she is entitled to relief because the agency's decision is an incorrect application of law to undisputed facts. In other words, she contends the agency's decision is "[b]ased upon an irrational, illogical, or wholly unjustifiable application of law to fact that has clearly been vested by a provision of law in the discretion of the agency." Iowa Code § 17A.19(10)(m). We will therefore analyze whether the district court correctly applied the law by applying section 17A.19(10)(m) to the agency action to determine whether our conclusions are the same as the district court's. *Weishaar v. Snap–On Tools Corp.*, 506 N.W.2d 786, 789 (Iowa Ct. App. 1993); *Langley v. Emp't Appeal Bd.*, 490 N.W.2d 300, 302 (Iowa Ct. App. 1992).

The Board determined that "three incidents, taken together, establish a pattern and are sufficient to indicate a disregard of the employer's interests." The district court upheld that interpretation and found substantial evidence supporting a finding of disregard. However, the definition of misconduct requires more than a "disregard" it requires a "carelessness or negligence *of such degree of*

*recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard* of the employer's interests." Iowa Admin. Code r. 871–24.32(1)(a) (emphasis added). The agency adopted the ALJ's findings and conclusions, which provided, "The three incidents, taken together, establish a pattern and are sufficient to indicate a disregard of the employer's interests." The agency made no finding that the acts constituted an "intentional and substantial" disregard of the employer's interests or met any of the other alternative standards. Mere negligence is not sufficient. *Lee*, 616 N.W.2d at 666. Reoccuring acts of negligence by an employee would probably be described by most employers as in disregard of their interests. The misconduct legal standard requires more than reoccurring acts of negligence in disregard of the employer's interests.

In light of the agency's failure to apply the proper legal standard, we reverse the district court with directions to remand to the Employment Appeal Board to make findings of fact and conclusions using the proper legal standard. *See O'Brien v. Emp't Appeal Bd*., 494 N.W.2d 660, 662 (Iowa 1993).

**REVERSED AND REMANDED WITH DIRECTIONS.**