William E. YOUNG, Appellee,

v.

Charles GREGG, Individually,
Defendant,

**and**

Clarmond Country Club, Clarion,
Iowa, Appellant.

No. 90–1190.

Supreme Court of Iowa.

Jan. 22, 1992.

As Corrected Jan. 30, 1992.

M. Gene Blackburn and James L. Kramer, Johnson, Erb, Latham, Gibb & Carlson, P.C., Fort Dodge, for appellant.

Tito Trevino, Peter J. Leehey, and Jerry L. Schnurr III of Trevino, Leehey & Schnurr, Fort Dodge, for appellee.

Considered by McGIVERIN, C.J., and LARSON, SCHULTZ, SNELL and ANDREASEN, JJ.

ANDREASEN, Justice.

This case involves a claim by a golfer against a golf club for injuries he received when struck by a golf ball. At the time he was hit, the golfer had just completed a tournament round and was heading back to the clubhouse. We affirm the district court judgment entered on a jury verdict against the golf club.

Generally, there are two different ways to start a golf tournament. The first is to have all of the contestants begin their rounds at one or two specific tees. These tees are usually located on the first and tenth holes. The groups of contestants are staggered and begin their rounds after the previous group has played far enough ahead so as not to be subject to being hit.

The second way to start a golf tournament is via a "shotgun start." In theory, a "shotgun start" golf tournament begins with groups of players on the tee of each hole of the golf course. A shotgun or other loud device is fired or sounded, usually from the clubhouse, which is the signal for the contestants to begin play. The contestants play around the golf course, finishing their rounds at the cup of the hole prior to the tee on which they began. For all but one of the groups of contestants this means they are not located at the finishing hole at the completion of the tournament. For these groups then, there is a trip from the point of finish back to the clubhouse, to turn in their scorecards.

I. *Factual and Procedural Background.*

Plaintiff, William E. Young, entered a "three man best shot," shotgun start tournament at the Clarmond Country Club. Although a member of Clarmond, Young was required to pay a twenty dollar entry fee. There was to be a steak fry following the completion of the tournament. Clarmond's board of directors approved the tournament.

Young had his own golf cart and drove it along as he and his partners played. Young and his two partners began the tournament on the third hole, meaning they finished at the cup on the second hole. The threesome finished and, seeing that the group behind them on the first hole had already finished, they drove back towards the clubhouse along the fairway of the first hole. Young did not expect that anyone would be playing number one, as he assumed that until the tournament was over the course would be closed to the public. Young's cart was proceeding in a direction opposite to that of the way the first hole was to be played.

The first hole is a 465 yard, par four. It is a straight hole bounded by trees and a cornfield on the left and trees and a railroad track on the right. There is a small ridge across the middle of the fairway which blocks visibility.

Charles Gregg, a member of the club, wanted to play golf on the same day as the tournament. He phoned the club to learn what time the tournament would end. He was told that the tournament would be completed around 7:30 p.m. Gregg arrived at the club and prepared himself and his cart for a round of golf. Before starting, Gregg sought to speak with someone in the pro shop, but there was nobody there. Gregg went out to the first tee and hit his drive a short distance off the tee. On his second shot, Gregg hit a line drive over the crest of the ridge.

Young's path of travel on the first fairway brought him into direct contact with

Gregg's second shot. Young was coming up to the crest of the ridge when the ball struck him. Young testified that he saw the ball the split second before it hit him. The golf ball struck Young almost directly in the center of the lens of his glasses on the left side of his face. The left lens was knocked completely out of the frame. The force of Gregg's shot knocked Young out of his cart. The golf ball landed in Young's hands; he thought it was his eye. Young suffered injuries to both his eye and the area around his eye.

Young sued both Gregg and Clarmond for his injuries. Young settled with Gregg who was then dismissed with prejudice from the suit. The action against Clarmond proceeded to trial. The jury found Gregg and Young were not at fault and that Clarmond was 100% at fault. The jury awarded Young $100,000 for his injuries and the district court entered judgment upon the verdict. Clarmond's motion for new trial was denied by the court. Clarmond appealed.

We transferred the case to the court of appeals. The court of appeals, in a split decision, reversed the district court judgment. The thrust of the court of appeals' opinion was that Clarmond owed no duty of care to Young because being hit by a golf ball on the fairway is a risk inherent in the game of golf. Clarmond did not know nor should it have known that Young would choose to return to the clubhouse in the opposite direction of play. The dissent referred to this theory, relied upon for reversal, as the "damn fool rule," or in more legalistic terms, an assumption of risk defense.

We subsequently granted further review and now vacate the decision of the court of appeals and affirm the district court judgment.

II. *Issues on Appeal.*

Clarmond raises three issues on appeal:
I. Whether the court erred in failing to sustain defendant's motion for directed verdict based upon plaintiff's failure to prove Clarmond knew or should have known that there was a condition on the premises that presented a risk of harm to the plaintiff.
II. Whether the court erred in refusing to give Iowa uniform jury instruction 900.1 and in granting instruction nos. 15 and 19.
III. Whether defendant was entitled to a directed verdict where the facts showed that it delegated the course management to an independent contractor Allen Blake, the club professional.

When reviewing the district court judgment, we consider only those issues properly preserved and raised on appeal. *Hubby v. State*, 331 N.W.2d 690, 694 (Iowa 1983).

■ Clarmond did not claim in support of its motion to dismiss that it had no duty of care to Young because of the inherent risk in the game of golf or that the risk was not foreseeable. Nor was the issue raised in Clarmond's brief on appeal. The argument relied upon by the court of appeals was first raised by Clarmond in its reply brief. However, we have long held that an issue cannot be asserted for the first time in a reply brief. *See, e.g., Phoenix Mut. Ins. Co. v. Galloway Farms*, 415 N.W.2d 640 (Iowa 1987); *Brown v. First Nat'l Bank*, 193 N.W.2d 547, 551 (Iowa 1972) and cases cited therein. Iowa R.App. P. 14(a)(3).

As was done in Clarmond's brief, we combine the first two issues and address them together. Clarmond urges that Young pleaded a premises liability case and then "failed to make a jury case on the issue of whether the defendant knew, or in the exercise of reasonable care, should have known that there was a condition on the premises that involved an unreasonable risk of injury to the plaintiff." Clarmond further argues that the instructions given were related to general negligence and not premises liability. Thus, Clarmond argues Young did not prove his case because "the elements of proof in cases involving landowners and occupiers are different than other negligence cases."

■ We think that Clarmond has misstated the standard to be applied in this case. Clarmond's position would be a cor-

rect statement of the standard for purposes of premises liability where some inanimate object on the premises or some defect in the condition of the premises causes the injury. *See* Restatement (Second) of Torts § 343 (1965). However, Young's claim involves negligence predicated on the act of a third party while on the premises. In such cases the standard is different. The proper standard is:

A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to

(a) discover that such acts are being done or likely to be done, or

(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

Restatement (Second) of Torts § 344. *See, e.g., Galloway v. Bankers Trust Co.*, 420 N.W.2d 437, 438 (Iowa 1988) (applying section 344); *Martinko v. H–N–W Assocs.*, 393 N.W.2d 320 (Iowa 1986) (holding that section 344 was the proper standard although the facts were held not to give rise to liability).

### A. Pleadings.

A close examination of Young's petition clearly shows his claim against Clarmond is founded upon section 344. Young pleaded, as a participant in a golf tournament, he was an invitee of Clarmond. Although the term "invitee" is specifically used in section 343, the use of the term in the pleadings does not automatically trigger its application. Rather, we think that the term was used in these pleadings to show that Young was on the premises for the owner's business purposes in accordance with section 344. Young further pleaded that the physical harm resulted from the acts of a third party, Gregg. Finally, Young pleaded that the club did not exercise reasonable care or was negligent:

a. In allowing non-tournament golfer Charles Gregg to begin a round of golf prior to completion of the aforesaid tournament.

b. In failing to warn non-tournament golfer Charles Gregg that tournament golfers would be returning from the golf course to the clubhouse from outlying holes.

c. In failing to advise tournament players that the Clarmond Country Club had opened the course to non-tournament players prior to the completion of the aforesaid tournament.

Clearly, these pleadings were appropriate under the standard of section 344.

Under section 344 Young was not required to plead or prove that "Clarmond knew or should have known that there was a condition on the premises that presented a risk of harm to the Plaintiff." Such a requirement is only necessary under section 343, which we conclude was not the proper standard in this case.

### B. Proof.

In reviewing a trial court's ruling on a motion for a directed verdict we review the evidence in the same light as the district court to determine whether a jury question was generated. *Smith v. Smithway Motor Xpress*, 464 N.W.2d 682 (Iowa 1990). Thus, in considering the propriety of a motion for directed verdict we view the evidence in the light most favorable to the party against whom the motion was made. Iowa R.App. P. 14(f)(2).

However, we have already concluded that Clarmond's underlying argument in support of this particular motion for directed verdict is misplaced. Young was not required to prove section 343 elements because this was properly a section 344 case.

We, like the district court, find there was evidence sufficient to generate a jury question as to whether Clarmond had breached its duty under section 344. Even where the facts are not in dispute or contradicted, if reasonable minds might draw different inferences from them, a jury question is engendered. Iowa R.App. P. 14(f)(17). Thus, it was not error for the

district court to overrule Clarmond's motion for directed verdict.

### C. Instructions.

◼ Clarmond objected to the following instructions:

Instruction *15:*

The owner or operator of a golf course is under an ordinary duty to exercise reasonable care for the safety of others. This duty to exercise reasonable care requires that the owner or operator of the golf course exercise care that takes into account the situation and circumstances. This duty includes the obligation to exercise reasonable care to prevent injuries caused by the negligence of third persons, and to keep the golf course in reasonably safe condition for playing patrons during the time they are on the course.

Instruction *19:*

The Plaintiff claims that the Defendant was at fault because of Defendant's negligence. The grounds of fault are explained to you in other instructions.

The Plaintiff must prove all of the following propositions:

1. Defendant Clarmond Country Club was negligent in one or more of the following ways:

(a) In allowing non-tournament golfer Charles Gregg to begin a round of golf prior to completion of a shot gun golf tournament, or

(b) In failing to warn non-tournament golfer Charles Gregg that tournament golfers would be returning from the golf course to the clubhouse from outlying holes, or

(c) In failing to advise tournament players that the Clarmond Country Club had opened the course to non-tournament players prior to the completion of shot gun golf tournament.

2. The negligence was a proximate cause of William Young's damage.

3. The amount of damage.

If Plaintiff William E. Young has failed to prove any of these propositions, the Plaintiff is not entitled to damages. If the Plaintiff has proved all of the propositions, you will consider the defense of comparative fault as explained in Instruction No. *23.*

When reviewing the propriety of the submission of instructions to a jury, we follow well-established standards. These standards are set forth in *Sanders v. Ghrist,* 421 N.W.2d 520, 522 (Iowa 1988), and need not be repeated here.

Applying these standards, we believe the combination of instructions 15 and 19 adequately instructed the jury on the elements of a section 344 theory of liability. It was not error for these instructions to be given to the jury.

In place of these instructions, Clarmond requested that Iowa Civil Jury Instruction 900.1, the standard premises liability instruction, be submitted to the jury. Iowa Civil Jury Instruction 900.1 is based on, and lists as its authority, Restatement (Second) of Torts §§ 343 and 343A. Because we conclude that this case is more appropriately a section 344 case and not a section 343 case, it was not error to refuse to submit this instruction to the jury.

### III. *Delegation of Duty to Supervise the Tournament.*

◼ Clarmond argues the district court should have directed a verdict because the facts show Clarmond delegated the course management to an independent contractor, the club professional Al Blake.

The district court instructed the jury as to the definition of an independent contractor. The court further instructed the jury that Clarmond claimed Young's damages were solely the result of the acts of Blake, an independent contractor whose duty it was to supervise the tournament and course.

Viewing the evidence in the light most favorable to Young, we find that Clarmond's written agreement with Blake gave him the exclusive right to operate the pro shop and to serve as the golf professional. As part of his duties, Blake was to work with the golf committee for special events, such as tournaments. Clarmond's board of directors approved the tournament in which

Young was injured. Blake was not advised of the tournament or asked to work at it. Clarmond employed a grounds superintendent who decided when the golf course was to be closed.

We think there was sufficient evidence to raise a jury question as to whether Clarmond was the possessor of the course at the time of Young's injury and whether the club professional's acts were the sole proximate cause of Young's injury.

IV. *Conclusion and Disposition.*

No reversible error was committed by the district court. We therefore vacate the decision of the court of appeals and affirm the judgment entered on the jury verdict in favor of Young. Costs are taxed to appellant.

DECISION OF THE COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.