**DICO, INC.,** Appellant,

v.

**IOWA EMPLOYMENT APPEAL BOARD,** Mark S. Crook, Steven C. Davis, Darryl A. Dupree, Timothy J. Fowler, Raymond E. Smith, Terry M. Straker and Otis J. Alexander, et al., Appellees.

No. 96–1748.

Supreme Court of Iowa.

March 25, 1998.

Gene R. LaSuer and Scott M. Brennan of Davis, Brown, Koehn, Shors & Roberts, P.C., Des Moines, for appellant.

William C. Whitten, Des Moines, for appellees.

Considered by McGIVERIN, C.J., and HARRIS, LAVORATO, NEUMAN, and TERNUS, JJ.

TERNUS, Justice.

Dico, Inc. appeals an award of unemployment benefits to its former employees. It claims these employees are disqualified for benefits because they failed to accept offers of employment made by Dico's parent company. The Iowa Employment Appeal Board rejected Dico's claim of disqualification because the job offers were made prior to Dico's termination of the claimants' employment. Finding no basis for reversal, we affirm.

## I. Background Facts and Proceedings.

The individual appellees were employees of Dico in 1995. In March of that year, the company unveiled its plan to close its Des Moines manufacturing facility on July 25, 1995. Pursuant to a plant-closing agreement negotiated with the claimants' union, Dico announced that jobs would be made available for each Dico worker at Titan Tire. Titan Tire was owned by Dico's parent company and also had a plant located in Des Moines.

Dico posted various Titan positions at the Dico plant and gave Dico workers until July 25, 1995 to bid on a job. The Dico plant eventually closed on July 28, 1995, and the claimants' employment relationship with Dico ended on that date. Although many Dico

employees accepted jobs with Titan, the claimants did not. Instead, the claimants filed for unemployment benefits in early August 1995.

Dico contested the unemployment claims, contending the claimants had refused suitable work and therefore were disqualified for benefits. The Iowa Employment Appeal Board rejected Dico's claim of disqualification, relying on Iowa Administrative Code rule 871–24.24(8) (1997),[1] which requires that the offer of work and the claimant's refusal must occur after the claimant has applied for unemployment benefits in order to effect a disqualification. The agency's award of benefits was affirmed on judicial review to the district court. In addition, the district court rejected Dico's claim that a member of the Iowa Employment Appeal Board should have disqualified himself due to a conflict of interest. Dico filed this appeal.

## II. Scope of Review.

■ Our review of unemployment benefit cases is governed by the Administrative Procedure Act, Iowa Code chapter 17A. See Suluki v. Employment Appeal Bd., 503 N.W.2d 402, 404 (Iowa 1993). We will grant relief where substantial rights of a party have been prejudiced because the agency action is in excess of the agency's statutory authority, is unsupported by substantial evidence, is unreasonable, arbitrary, or capricious, or is affected by other error of law. See Iowa Code § 17A.19(8) (1995); Aluminum Co. of Am. v. Employment Appeal Bd., 449 N.W.2d 391, 393–94 (Iowa 1989).

■ We grant only limited deference to the agency on issues of law, including statutory interpretation. See Norland v. Iowa Dep't of Job Serv., 412 N.W.2d 904, 908 (Iowa 1987). Notwithstanding the court's ultimate responsibility to decide issues of law, when a case calls for the exercise of judgment on a matter within the expertise of the agency, we generally leave such decisions to the informed judgment of the agency. See Burns v. Board of Nursing, 495 N.W.2d 698, 699

(Iowa 1993). Agency findings of fact are binding on appeal unless those findings are not supported by substantial evidence. See Norland, 412 N.W.2d at 908.

## III. Statutory Framework.

As noted above, the agency ruled that the claimants were not disqualified for benefits by refusing employment with Titan because the offers of employment preceded the termination of the claimants' jobs with Dico. The agency decision rested on Iowa Code section 96.5(3) and its implementing regulations.

Section 96.5(3) contains legislative authorization for the disqualification of any claimant who "has failed, without good cause, ... to accept suitable work when offered." The agency has adopted a rule further defining the parameters of this disqualification: "Both the offer of work ... and the claimant's accompanying refusal must occur within the individual's benefit year, as defined in subrule 24.1(21), before the Iowa Code subsection 96.5(3) disqualification can be imposed." Iowa Admin. Code r. 871–24.24(8). The individual's "benefit year" is defined as a period of 365 days beginning with "the Sunday of the current week in which the claimant first files a valid claim." Id. r. 871–24.1(21); see also id. r. 871–24.1(135) (stating a week begins on Sunday and ends on Saturday). To be valid, a claim for benefits must be made in accordance with the regulations adopted by the agency. See Iowa Code § 96.6(1). The agency has adopted a rule allowing an individual to file a claim for benefits "[f]ollowing separation from work." Iowa Admin. Code r. 871–24.2(1)(a). Thus, a valid claim for benefits cannot be filed until a claimant becomes unemployed. Under the agency's rules, only then is the refusal-to-work disqualification applicable.

The claimants here filed their claims for unemployment benefits in early August, after Dico's termination of their employment. Their benefit year began that week. Therefore, Titan's offer of employment, which expired in late July, was not within the claim-

---

1. At the time of the administrative proceeding giving rise to this appeal, the applicable regulations were found in chapter 345 of the Iowa Administrative Code. Chapter 345 has since been

renumbered as chapter 871. We will refer to the governing regulations by their current designation.

ants' benefit year. Consequently, under rule 871–24.24(8), the claimants' refusal of Titan's offer did not disqualify them for benefits.

## IV. *Was the Agency's Decision Supported by Substantial Evidence?*

Dico complains that the agency's decision is unsupported by substantial evidence. We reject this contention. There is substantial evidence in the record to support the agency's finding that the factual prerequisites for the refusal-to-work disqualification were not met. Consequently, the remainder of our discussion will focus on the validity of rule 871–24.24(8).

## V. *Is Rule 871–24.24(8) Within the Agency's Statutory Authority?*

█ We presume agency rules are valid, so Dico must "demonstrate that a 'rational agency' could not conclude the rule was within the agency's delegated authority." *Teleconnect Co. v. Iowa State Commerce Comm'n*, 404 N.W.2d 158, 162 (Iowa 1987). Here the legislature granted the agency the authority to determine a claimant's eligibility for benefits. *See* Iowa Code §§ 96.4, .6(1). Thus, the agency had the general authority to address by rule the issue of disqualification. *See Young Plumbing & Heating Co. v. Iowa Natural Resources Council*, 276 N.W.2d 377, 382 (Iowa 1979) (stating agency has discretion to develop policy by rule or on a case-by-case basis).

## VI. *Is Rule 871–24.24(8) Unreasonable, Arbitrary or Capricious?*

█ Because chapter 96 does not address the circumstances under which the refusal of an offer of work is disqualifying, the agency was delegated the task of determining the parameters of the refusal-to-work disqualification. We now decide whether that delegated authority was exercised in an unreasonable, arbitrary, or capricious manner, as claimed by Dico.

█ Iowa Code section 17A.19(8)(g) authorizes relief from agency action that is "[u]nreasonable, arbitrary or capricious or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion."

These terms have established meanings: "An agency's action is 'arbitrary' or 'capricious' when it is taken without regard to the law or facts of the case.... Agency action is 'unreasonable' when it is 'clearly against reason and evidence.'" *Soo Line R.R. v. Iowa Dep't of Transp.*, 521 N.W.2d 685, 688–89 (Iowa 1994). An abuse of discretion occurs when the agency action "rests on grounds or reasons clearly untenable or unreasonable." *Schoenfeld v. FDL Foods, Inc.*, 560 N.W.2d 595, 598 (Iowa 1997). We have said an "'abuse of discretion is synonymous with unreasonableness, and involves lack of rationality, focusing on whether the agency has made a decision clearly against reason and evidence.'" *Id.* (quoting *Stephenson v. Furnas Elec. Co.*, 522 N.W.2d 828, 831 (Iowa 1994)). Thus, in evaluating Dico's challenge to rule 871–24.24(8), we consider whether there is a basis in law and fact for the agency's rule and whether it lacks rationality.

Dico argues rule 871–24.24(8) conflicts with the public policy underlying chapter 96, namely, to assist unemployed individuals in finding suitable employment and to pay benefits to those individuals during the period when suitable work is not available. The agency's rule defeats this purpose, argues Dico, because it directs resources to individuals such as the claimants who have actively chosen not to work. Dico contends "[a]n individual should be required to accept a suitable offer of employment when they know with certainty that they will be unemployed in the near future." The agency responds that only one who is actually unemployed and seeking benefits should be required to look for and accept suitable work.

█ As noted above, the agency has been delegated broad authority by the legislature to determine the circumstances under which an individual's refusal of work should be disqualifying. This task may be accomplished through the development of policy on a case-by-case basis or by adoption of a rule. *See Young Plumbing & Heating Co.*, 276 N.W.2d at 382. Here, the agency chose to adopt a bright line rule: only offers of employment made during the claimant's benefit year trigger the refusal-of-work disqualification. In considering the reasonableness of

this rule, we keep in mind that a fundamental tenet of administrative law "is that administrative decisions are to be made by the agencies, not the courts." *Leonard v. Iowa State Bd. of Educ.*, 471 N.W.2d 815, 815 (Iowa 1991).

Administrative tribunals were established in order to transfer from the courts to an agency the authority to resolve disputes in an area in which the agency is presumed to have expertise superior to the court's. The "hands off" policy of the courts in reviewing agency determinations recognizes that judicial second-guessing of agency wisdom would destroy the fabric of administrative law and render its operation largely meaningless and therefore an extravagant waste of both public and private funds.

*Id.* at 816. Giving deference to the agency's specialized knowledge in this area, we conclude its judgment in adopting rule 871–24.24(8) was not irrational nor inconsistent with the policy of chapter 96.

It is beyond dispute that there are differing ways to effectuate the policies underlying unemployment compensation statutes. Other courts who have considered the disqualification of an individual on the basis of a rejected employment offer made prior to the individual's unemployment have reached differing conclusions. *See, e.g., Department of Educ. v. Atwater*, 417 So.2d 749 (Fla.Dist.Ct. App.1982); *Sinai Hosp. v. Department of Employment & Training*, 309 Md. 28, 522 A.2d 382 (1987); *Teitell v. Commonwealth*, 118 Pa.Cmwlth. 406, 546 A.2d 706 (1988). Two courts have ruled that a claimant who had rejected a job offer made prior to the individual's unemployment was disqualified for benefits. *See Atwater*, 417 So.2d at 751; *Teitell*, 546 A.2d at 709. One court has held to the contrary, ruling that the claimant was not disqualified. *See Sinai Hosp.*, 522 A.2d at 391. Because the decision in the latter case is identical to the ruling of the agency here, we turn to an examination of the basis for the court's ruling.

In *Sinai Hospital*, the highest court in Maryland approved an agency decision holding that the refusal-to-work disqualification was "triggered only after the filing of a claim and an initial determination of eligibility." 522 A.2d at 391. The court deferred to the agency's analysis of this issue:

"A person's entire history is not on trial in an unemployment claim. No one would conceive of disqualifying a claimant from unemployment benefits during a certain week because he failed to actually look for work during another week, long prior to his ever filing a claim for benefits. [The refusal-to-work disqualification] is another manifestation of the legislature's desire that people claiming unemployment benefits actively look for work in good faith, but it does not mean that a refusal of a job which was offered in the past, during a time when unemployment benefits were not even claimed, should be held against claimants."

*Id.* (quoting from the agency's ruling).

Notwithstanding the existence of a rationale for rule 871–24.24(8), Dico asserts the operation of the rule under the circumstances of this case is absurd because the claimants could have avoided unemployment benefits by accepting jobs with Titan. We note, however, that Dico could have avoided liability for these payments had its parent merely extended its offer of employment for a few more days. We have not overlooked Dico's explanation that Titan was retooling its plant and needed to know by the end of July how many employees would be working there and in what positions. But the uniqueness of Titan's circumstances is not a sufficient basis to override the agency's judgment on the best way to effectuate the policies of the unemployment compensation law, when it appears the rule is otherwise consistent with those policies.

The legislature declared the public policy of the state in enacting the unemployment compensation act includes the encouragement of employers "to provide more stable employment" and to accumulate funds "to be used for the benefit of persons unemployed through no fault of their own." Iowa Code § 96.2. The agency could have reasonably concluded that these goals, to encourage full and continuous employment, would be promoted most efficiently and effectively by adopting a rule that would clearly inform

both claimants and employers of the circumstances that would result in disqualification so they could conduct themselves accordingly. In addition, the promulgation of a rule broad enough to govern the diverse factual situations giving rise to unemployment compensation claims would reduce the need for a case-by-case determination of the boundaries of the refusal-to-work disqualification, thereby preserving the agency's funds for the payment of benefits rather than the processing of contested cases. Finally, as we discussed earlier, the agency's decision that a claimant has an obligation to look for and accept another job only during the claimant's benefit year is a reasonable application of the refusal-to-work disqualification. *See Sinai Hosp.*, 522 A.2d at 391.

For these reasons, we hold rule 871–24.24(8) has a reasonable basis in fact and law and does not lack rationality. Therefore, the agency's reliance on the rule here was not unreasonable, arbitrary, or capricious, and was not an abuse of discretion.

VII. *Dico's Challenge to a Member of the Iowa Employment Appeal Board.*

■■■ Dico claims the district court erred in not finding that one member of the Iowa Employment Appeal Board should have disqualified himself from the case due to a conflict of interest. The claimants respond that this issue was not raised at any stage of the proceedings before the agency and, therefore, any error was not preserved.

Agencies have statutory authority to determine questions of bias. *See* Iowa Code § 17A.17(3), (4). The aggrieved party must raise the issue to the agency, who will then "determine the matter as part of the record in the case." *Id.* § 17A.17(4). In contested cases, such as the one before us, the district court "shall not itself hear any further evidence with respect to those issues of fact whose determination was entrusted by Constitution or statute to the agency." *Id.* § 17A.19(7). Accordingly, we have previously held that a party who failed to present a claim of bias to the agency did not preserve the issue for judicial review. *See Kholeif v. Board of Med. Exam'rs*, 497 N.W.2d 804, 806–07 (Iowa 1993).

Here, Dico first mentioned a board member's possible conflict of interest in the district court when Dico presented an affidavit detailing the factual basis for its claim of bias. The district court properly refused to consider Dico's affidavit. If Dico believed a board member had a conflict of interest that disqualified the board member from hearing these claims for benefits, Dico should have sought leave of the district court to present additional evidence to the *agency*. *See* Iowa Code § 17A.19(7) (providing procedure for presenting additional evidence to the agency). Having failed to do so, there is no basis in this record for judicial review of Dico's claim of bias.

**AFFIRMED.**