# IN THE COURT OF APPEALS OF IOWA

No. 18-0400
Filed November 21, 2018

**CITY OF MONTICELLO, IOWA,**
    Plaintiff-Appellant,

**vs.**

**EMPLOYMENT APPEAL BOARD,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Jones County, Kevin McKeever, Judge.

A city appeals the judicial review order upholding the grant of unemployment benefits to a former employee. **AFFIRMED.**

Douglas D. Herman, Monticello, for appellant.

Richard R. Autry of Employment Appeal Board, Des Moines, for appellee.

Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**TABOR, Judge.**

The City of Monticello challenges the Employment Appeal Board's award of unemployment benefits to Tamera Bartram, the former parks and recreation director. The city contends Bartram is ineligible for benefits because she voluntarily ended her employment without good cause attributable to the city. In the alternative, the city argues Bartram cannot receive benefits because she refused an offer to work.

Like the district court on judicial review, we reject the city's arguments. Substantial evidence supports finding the city eliminated Bartram's position and the agency correctly applied the law to the facts. And the refusal-to-work disqualification does not apply because the city's offers were outside the benefit year. Thus, we affirm the award of benefits.

## I.      Facts and Prior Proceedings

Bartram started working for the city in 2003 and became director of the parks and recreation department in 2004. In December 2016, the city administrator notified Bartram he planned to eliminate her position. In its place, the city would create two new positions: a parks and recreation director and a superintendent of parks and facilities. The city invited Bartram to apply for either position if she wished to remain employed. Bartram applied only for the director position. When she learned the city "gave that job to somebody else," she cried.

She testified: "It told me that I wasn't worth what I had been doing all these years" and, "Honestly, I thought they just wanted to get rid of me."[1]

The city did offer Bartram the superintendent position. But she declined. Despite the city's repeated attempts, Bartram could not be persuaded to accept the superintendent position. Bartram worked until the city eliminated her position on February 28, 2017.

After her employment ended, Bartram filed a claim for unemployment benefits. In March 2017, a representative of Iowa Workforce Development (IWD) denied her claim, stating "our records indicate you voluntarily quit work on 02/28/17." The IWD cited Iowa Code section 96.5(1) (2017) as the basis for her disqualification from receipt of benefits.[2]

Bartram appealed the IWD decision to an administrative law judge (ALJ) who overturned the disqualification and found Bartram eligible for unemployment benefits. The ALJ wrote:

> Claimant applied for the director position, but was notified in January that someone else had been offered the job. Claimant was offered the superintendent position, which would have included much of the same job duties, at the same rate of pay and benefits she was currently receiving. Claimant turned that position down. Claimant was told the new director would be starting on March 1 and agreed to stay on in her current position until that time. The employer agreed claimant would not have been allowed to remain in her position beyond February 28, 2017.

---

[1] Bartram's testimony brings to mind a quote from fictional parks and recreation Deputy Director Leslie Knope: "This is where the rubber of government meets the road of actual human beings." *Parks and Recreation: Pilot* (NBC television broadcast Apr. 9, 2009).
[2] Section 96.5(1) lists "voluntary quitting" absent good cause attributable to the employer as a basis for disqualification from benefits.

The ALJ thus found Bartram's "position was no longer available effective March 1, 2017 . . . her separation was a layoff due to lack of work."

The city appealed the ALJ's decision to the Employment Appeal Board (EAB), arguing the facts did not support the ALJ's findings. In the city's estimation: "If there was a lack of work, she would not have been offered continuing employment. She chose, voluntarily, without good cause attributable to the employer, to leave her employ with the city."[3] The city also argued because Bartram refused to accept the superintendent position, the refusal-to-work disqualification should apply. *See* Iowa Code § 96.5(3).[4]

The EAB rejected the city's argument and affirmed the ALJ's ruling with modifications addressing the refusal-to-work disqualification. Relying on *Dico, Inc. v. Employment Appeal Board*, 576 N.W.2d 352, 355 (Iowa 1998), the EAB held the refusal-to-work disqualification applies only when the employer offers work after a claimant files for unemployment benefits. Because the city's offers of the superintendent position all occurred before Bartram filed for unemployment benefits, the EAB concluded she was not disqualified.

The city sought judicial review. The district court framed two arguments: "(1) the EAB's findings were not supported by substantial evidence and (2) the EAB incorrectly interpreted the law and incorrectly applied the facts to the law." The court held, "The record provides substantial evidence for the EAB's factual findings, including that Bartram's position was eliminated by the City." And

---

[3] The regulation cited by the ALJ defines "layoff" as "a suspension from pay status initiated by the employer with prejudice to the worker for such reasons" as: "lack of orders" and "model changeovers." *See* Iowa Admin. Code. r. 871.24.1(113)(a).

[4] Section 96.5(3) lists "failure to accept work" as a cause for disqualification from benefits.

because a voluntary quit requires a volitional act from the employee to end the employer-employee relationship, the district court agreed with the EAB that Bartram's departure was not voluntary. The district court also affirmed the EAB's conclusion the refusal-to-work disqualification did not apply to Bartram's claim because its "decision was not clearly against reason or evidence."

The city now appeals the judicial review order, contending the EAB misapplied the law to the facts in determining whether Bartram voluntarily quit, and did not base its decision on substantial evidence, incorrectly interpreted and misapplied the refusal-to-work disqualification.

## II.      Scope and Standards of Review

Iowa Code chapter 17A (the Iowa Administrative Procedure Act) governs our review in unemployment benefit cases. *Harrison v. Emp't Appeal Bd.*, 659 N.W.2d 581, 586 (Iowa 2003). We employ the standards described in chapter 17A in determining whether we reach the same conclusion as the district court. *City of Des Moines v. Iowa Dep't of Transp.*, 911 N.W.2d 431, 438 (Iowa 2018).

The agency's findings of fact are binding if they are supported by substantial evidence when we review the record as a whole. *Sharp v. Emp't Appeal Bd.*, 479 N.W.2d 280, 282 (Iowa 1991). Substantial evidence is "the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance." Iowa Code § 17A.19(10)(f)(1). Our task is not to determine whether the evidence supports a different finding but to determine whether substantial evidence supports

the findings actually made. *Cedar Rapids Cmty. Sch. Dist. v. Pease*, 807 N.W.2d 839, 845 (Iowa 2011).

When reviewing a challenge to the agency's interpretation of law, we do not defer to an agency's interpretations of statutes and case law unless the legislature vested interpretive authority in the agency. *Neal v. Annett Holdings, Inc.*, 814 N.W.2d 512, 518 (Iowa 2012).

In appeals challenging an agency's application of the law or its own rules to the facts, we review for an abuse of discretion, reversing when we find the agency employed "wholly irrational reasoning or ignor[ed] important and relevant evidence." *City of Des Moines*, 911 N.W.2d at 440.

Finally, in appeals challenging the EAB's application of law, we review for an abuse of discretion, only disturbing the EAB's application of chapter 96 to the facts of Bartram's claim if that application was "irrational, illogical, or wholly unjustifiable." *See City of Des Moines*, 911 N.W.2d at 440; *Brewer-Strong v. HNI Corp.*, 913 N.W.2d 235, 243 (Iowa 2018) (quoting Iowa Code § 17A..

### III.    Analysis

The city raises two issues in this appeal. First, the city insists Bartram voluntarily quit under Iowa Code section 96.5(1). From that premise, it decries the EAB's decision she was entitled to unemployment benefits as lacking substantial evidence and misapplication of law to the facts. Second, the city contends the EAB misinterpreted and misapplied the refusal-to-work disqualification under section 96.5(3), resulting in an "irrational result, contrary to the public interest." We will address each issue in turn.

**A.      Voluntary Quit**

Turning to the first issue, we find substantial evidence Bartram did not quit, but rather the city eliminated her position.  We also conclude the EAB properly applied the law to the facts in concluding Bartram did not voluntarily quit.

On the substantial evidence question, we look to the agency's key fact findings: (1) the city eliminated Bartram's position; (2) the city then invited her to reapply but did not guarantee it would rehire her; and (3) the city agreed Bartram "would not have been allowed to remain in her position beyond February 28, 2017." The undisputed record reinforces the agency's finding Bartram's job was eliminated—the city did not meet the factual prerequisites for a voluntary-quit disqualification.  *See Dico*, 576 N.W.2d at 355.

Based on this evidence, the EAB's conclusion Bartram did not voluntarily quit was not unreasonable.  In *Irving*, our supreme court determined "a voluntary quit as a matter of law requires a volitional act on the part of the employee."  883 N.W.2d 179, 209 (Iowa 2016).  And "a voluntary quit must be volitional at its *inception*."  *Id.* (emphasis added).  In other words, a voluntary quit must stem from the employee's own free will to end the employer-employee relationship.  *Id.* (citing *Wills v. Emp't Appeal Bd*., 447 N.W.2d 137, 137–38 (Iowa 1989)); Iowa Admin. Code r. 871-24.25(96).

Here, Bartram "gave notice that she would leave at the end of February after her position was eliminated."  It was impossible for Bartram to remain in her current position after February 28.  Bartram's resignation did not stem from a desire to terminate her employment with the city—instead, it resulted from the city's

elimination of her position.[5] The EAB's conclusion Bartram did not voluntarily quit was not irrational, illogical, or unjustifiable. *See id.* We find no ground for reversal.

## B. Refusal-to-Work Disqualification

Next, we address the city's argument the refusal-to-work disqualification should preclude Bartram from receiving benefits. We agree with the district court's conclusion this disqualification does not apply in Bartram's case. The timing is critical—the city's offers of the superintendent position came before Bartram filed for unemployment benefits.

Our supreme court addressed a similar issue in *Dico*—an employer intended to eliminate job positions but offered alternative employment opportunities within the parent company. *See* 576 N.W.2d at 353. The EAB awarded benefits to employees who turned down the offer. *Id.* at 353–54. The employer appealed, arguing the refusal-to-work disqualification precluded receipt of benefits because the employees declined the prior job offers. *Id.* at 354. The employer argued awarding benefits to these employees undermined public policy because the unemployment compensation act aimed to provide funds for those who are unemployed through no fault of their own. *Id.* at 356. In short, because the employer tried to provide alternative jobs for the employees, it should not be liable for unemployment payments. *See id.*

Our supreme court rejected the employer's argument, finding it was reasonable for the agency to limit the refusal-to-work disqualification to job offers

---

[5] In its reply brief, the city contends for the first time that it merely changed the job description for Bartram's position. We decline to consider this late assertion. *See Young v. Gregg,* 480 N.W.2d 75, 78 (Iowa 1992) ("We have long held that an issue cannot be asserted for the first time in a reply brief.").

after a claimant files for unemployment benefits. *Id.* The *Dico* court concluded the EAB could have reasonably determined the limitation on the disqualification would reduce the administrative burden of possible case-by-case determinations and conserving those funds for unemployment benefit payments. *Id.* at 356–57.

Here, the city presents policy arguments similar to those made in *Dico*, urging the refusal-to-work disqualification should apply because the city offered Bartram the superintendent position several times before she resigned. *See id.* at 353–54. The city contends finding Bartram qualified for benefits would be "backwards and totally against the public interest and policy of maintaining people in employment." But our supreme court rejected these arguments in *Dico*, finding the bright-line rule was a reasonable manner of fulfilling the legislative goals of the unemployment compensation act. *See id.* at 356–57.

The city next attempts to distinguish *Dico* from Bartram's case based on the terms of the job offers. In *Dico*, the employer arranged for its parent company to offer employees job opportunities at a different facility in the same city. *Id.* at 353. Here, the city contends because it offered Bartram work "with the same employer, at the same location, at the identical wages and benefits[,]" *Dico* is not controlling.

We find unconvincing the city's efforts to distinguish *Dico*. What matters is *when* the employer makes the offer, not the particulars of the offer. *See id.* at 357 ("[T]he agency's decision that a claimant has an obligation to look for and accept another job only during the claimant's benefit year is a reasonable application of the refusal-to-work disqualification."). We therefore affirm the district court's ruling and find the refusal-to-work disqualification does not apply to Bartram.

**AFFIRMED.**