# IN THE COURT OF APPEALS OF IOWA

No. 18-1002
Filed March 6, 2019

**MEK BACCAM,**
    Plaintiff-Appellant,

**vs.**

**ACH FOOD COMPANIES, INC., a/k/a TONE'S, and SENTRY INSURANCE COMPANY,**
    Defendants-Appellees.

_____

Appeal from the Iowa District Court for Polk County, Paul R. Huscher, Judge.

An injured worker appeals the district court's judicial review decision in his workers' compensation case. **AFFIRMED IN PART AND REVERSED IN PART.**

Mark S. Soldat of Soldat & Parrish-Sams, PLC, West Des Moines, for appellant.

Patrick V. Waldron and Michael S. Jones of Patterson Law Firm, L.L.P., Des Moines, for appellees.

Heard by Doyle, P.J., and Mullins and McDonald, JJ.

**MULLINS, Judge.**

Mek Baccam appeals the district court's ruling on his petition for judicial review, which affirmed the workers' compensation commissioner's award of benefits except on the issue of penalty benefits, which the district court remanded to the commissioner. On appeal, Baccam contends the district court erred in: (1) affirming the commissioner's award of three percent permanent partial disability (PPD), claiming the award was the result of multiple errors by the commissioner; (2) failing to solely order the commissioner to determine penalty benefits on remand; (3) affirming the denial of his request to tax all of the transcript costs; and (4) taxing Baccam with three-quarters of the court costs.

I.     **Background Facts and Proceedings**

Baccam sustained a work-related injury on June 12, 2012, when his leg became caught between the forklift he was operating and a door frame. His employer, ACH Food Companies, Inc., a/k/a Tone's, provided bandages and ice on-site and then transported Baccam to the emergency room. Baccam's leg was sutured and x-rayed. On the same day, Baccam was referred to an occupational-medicine clinic where he was evaluated by Dr. Bingham. Following an examination, Dr. Bingham released Baccam to return to work with the restriction of sit-down duty only. Baccam did not report to work on June 13, as he voluntarily took a vacation day. When he returned to work, his light-duty assignment resulted in a change in the days he worked and the hours of his workday, and he was paid a lower hourly wage than his normal assignment, with no opportunity for overtime.

Baccam returned to Dr. Bingham on June 15 with complaints of bruising, redness, and warmth around the wound. The physician continued the existing

work restrictions. Baccam saw Dr. Bingham again on June 19 with complaints of continued pain but acknowledged the pain had decreased. Dr. Bingham noted a nearly full range of motion, some pain, and swelling. He modified Baccam's work restrictions to primarily sit-down duty with standing and walking as tolerated. Dr. Bingham saw Baccam again on June 22 and noted mild swelling and a mild limitation of motion. Baccam's work restrictions were eased to include kneeling and squatting as tolerated. Baccam's work restrictions were fully lifted on June 29, as Baccam indicated to Dr. Bingham he had little pain and some swelling but believed he was capable of returning to work without restriction. At the hearing, Baccam denied requesting the restriction release and testified that his symptoms had remained, including tingling, burning, and numbness.

On June 25, Baccam filed a claim with Tone's insurance company, Sentry, about the injury, his symptoms, and change in work assignment. Baccam saw his personal physician, Dr. Madson, on July 6 and reported soreness and swelling of his leg. Dr. Madson noted no redness, sign of infection, or significant swelling. He also noted Baccam walked with a normal gait. He assured Baccam the laceration would continue to heal and any soreness or tenderness would resolve over time. Baccam returned to Dr. Bingham on July 13, complaining of a pulling sensation in his leg and an inability to exercise as he had before the injury. Dr. Bingham noted some swelling and Baccam's complaints of pain. He continued to recommend Baccam work without restriction but referred him to physical therapy.

Baccam engaged in seven sessions of physical therapy from August 2 to August 20. The physical therapist noted the leg pain was resolved, the strength of the leg was five on a scale of five, and excellent range of motion. He discharged

Baccam to continue with exercises at home. Baccam returned to Dr. Bingham on August 24, claiming he received no relief from physical therapy and still suffered from swelling, tingling, and burning in his leg. Dr. Bingham noted some swelling around the wound but a full range of motion and a normal gait. At Baccam's insistence, Dr. Bingham referred Baccam to an orthopedic surgeon, Dr. Kimelman.

On September 6, Dr. Kimelman evaluated Baccam for his reported symptoms of tingling, numbness, and swelling. Baccam reported these symptoms were mild but constant. Dr. Kimelman determined Baccam's injury caused nerve damage in the back of his leg but the damaged area would improve over time. However, the nerves near the wound were lacerated and would likely not improve so there was some permanency to Baccam's injury, but it was "cosmetic and superficial."

Baccam returned to Dr. Kimelman on January 6, 2013 with complaints of itching, burning, and numbness. Kimelman noted Baccam reported improvement of the level of these symptoms. He recommended Baccam return in June, one year after the injury, to determine if there was permanency to his issues. Baccam returned in June and reported no change in his symptoms. Dr. Kimelman noted Baccam walked with a normal gait, but measured loss in the girth of Baccam's injured leg as compared to the other. He also noted some decreased sensation and local tenderness. Dr. Kimelman's opinion after examination was that Baccam's condition was unlikely to change or worsen but resulted in some permanence. On August 9, Dr. Kimelman opined Baccam sustained a one percent impairment to his leg as determined by the American Medical Association Guides to the Evaluation of Permanent Impairment, Fifth Edition. On August 15, Sentry

sent a letter to Baccam about Dr. Kimelman's impairment rating, which warranted 2.2 weeks of PPD benefits and included a check for the period of June 27 through July 11, 2013.

Baccam filed an arbitration petition with the workers' compensation commissioner in September. Baccam sought temporary partial disability (TPD) benefits plus interest to compensate for the reduced hourly wage and the hours he lost while on restricted duty. On March 25, 2014, Baccam completed an independent medical exam with Dr. Taylor. Dr. Taylor reported Baccam could walk without difficulty or a limp and he had full strength, no range-of-motion deficits, and no noticeable visible differences between his legs, but Dr. Taylor noted Baccam complained of pain upon palpation. He determined no further treatment was needed and assigned a three percent impairment to Baccam's leg. On October 14, Dr. Bingham opined that Dr. Kimelman's assigned one percent impairment was the maximum possible rating for Baccam.

Baccam's arbitration petition proceeded to a hearing on November 17, held before a deputy workers' compensation commissioner. Baccam was the only witness who testified. He testified that he continued to suffer from numbness, burning, itching, and intermittent tingling in his leg. He also testified that he was able to perform all his work duties but if he felt symptoms while working, he would change position or massage his leg. Baccam also testified that outside of work, he had less energy and was less active than he was before the accident. Additionally, he testified that he believed his leg was superior than average before the accident and, after the accident, his leg was below average.

The deputy commissioner issued a decision in October 2015. The deputy concluded Baccam was entitled to TPD for the time the employer assigned him light-duty work with a lower rate of pay. The deputy also determined Baccam sustained a three percent impairment to his lower leg which entitled him to 6.6 weeks of PPD benefits plus interest to commence at the conclusion of his TPD benefits. The deputy also found Baccam had established a delay or denial of his TPD benefits and Sentry failed to provide evidence to establish a reasonable cause or excuse for the delay. Based upon that finding, Baccam was entitled to penalty benefits of forty percent of the TPD benefit award. The deputy also found Baccam established a delay in the award of the PPD benefits since Sentry had not paid the entire PPD award owed. However, the deputy also found Sentry provided evidence of a reasonable cause for the delay through a reasonable investigation by requesting the opinion from one of Baccam's treating physicians and acting promptly after receipt of the opinion. Based upon these findings, the deputy denied an award of penalty benefits based upon the PPD award. The deputy further denied Baccam's request for taxation of the cost of the hearing transcript because the deputy did not request submission of the transcript and Baccam requested the transcript on his own accord. The deputy denied Baccam's request for rehearing.

Baccam appealed the deputy's decision to the workers' compensation commissioner. The appeal deputy, delegated by the commissioner, issued a decision in September 2017, affirming the arbitration decision in part, but reversing on the amount of TPD owed and the penalty benefits for the delayed payment of PPD. The appeal deputy modified the temporary-benefits calculation to exclude June 13, 2012, as Baccam chose to take a vacation day rather than report for work.

The appeal deputy also affirmed the three percent PPD award but awarded additional penalty benefits plus interest based upon the lack of communication to Baccam of the reason for delay in providing PPD benefit payments following the end of Baccam's entitlement to temporary benefits. The appeal deputy denied Baccam's application for rehearing.

In November 2017, Baccam sought judicial review of the appeal deputy's decision in the district court. Baccam claimed the appeal deputy erred in: (1) misapplying the law by holding the medical opinions were superior to Baccam's subjective assessments provided in his testimony; (2) failing to specify the dollar amount of the PPD award in the decision; (3) failing to impose a penalty in the payment of PPD compensation; and (4) failing to tax the transcription cost. Baccam also claimed the deputy commissioner violated Iowa Code section 17A.16(1) (2013) (requirements for contents of decisions).

In May 2018, the district court partially affirmed the appeal deputy's decision. The court determined the deputy commissioner did not misapply the law or fail to consider all the evidence presented. In reading the deputy's decision, the court found the deputy did consider all evidence, including Baccam's testimony, and the deputy was entitled to determine the weight of his evidence in comparison to the provided medical opinions. The court also found that "despite having clearly labeled sections for her findings of fact and conclusions of law, the Deputy partially blended her factual findings with her legal conclusions." This finding resulted in a failure to strictly abide by Iowa Code section 17A.16(1).[1] However, the court

---

[1] The statute provides: "A proposed or final decision shall include findings of fact and conclusions of law, *separately stated*." (Emphasis added.)

determined this was not reversible error because it was "possible to work backward and to deduce what must have been [the agency's] legal conclusions, and [its] findings of fact." *See Ward v. Iowa Dep't of Transp.*, 304 N.W.2d 236, 239 (Iowa 1981). The court also found that neither the deputy nor the appeal deputy erred in failing to specifically enumerate the amount of PPD owed to Baccam. On the issue of penalty benefits, the court found that Baccam met his burden to show a delay in the payment of PPD, shifting the burden onto Sentry to provide a reasonable excuse for the delay. However, there was no indication in the record that Sentry requested evaluations or any medical opinions, which would be evidence of a reasonable investigation. The court remanded the case back to the commissioner with instructions for the commissioner to explain its finding that Sentry conducted a reasonable investigation or to reevaluate for penalty benefits on Baccam's award of PPD. Finally, the court found no abuse of discretion for not taxing Sentry with transcript costs. The court also denied Baccam's motion to reconsider. Baccam appeals.

## II.      Standard of Review

"The standards set forth in Iowa Code chapter 17A govern judicial review of final decisions by the workers' compensation commissioner." *Ramirez-Trujillo v. Quality Egg*, L.L.C., 878 N.W.2d 759, 768 (Iowa 2016); *see also* Iowa Code § 86.26 (2017). "The district court acts in an appellate capacity to correct errors of law when reviewing the agency's decision." *JBS Swift & Co. v. Hedberg*, 873 N.W.2d 276, 279 (Iowa Ct. App. 2015). "[W]e review the district court decision to decide if our legal conclusions mirror those reached by the district court." *Meyer v. IBP, Inc.*, 710 N.W.2d 213, 225 (Iowa 2006). "If we reach the same conclusions,

we affirm; otherwise we may reverse." *Watson v. Iowa Dep't of Transp.*, 829 N.W.2d 566, 568 (Iowa 2013). "Our review of a decision of the workers' compensation commissioner varies depending on the type of error allegedly committed by the commissioner." *Jacobson Transp. Co. v. Harris*, 778 N.W.2d 192, 196 (Iowa 2010).

**III.     Analysis**

   A.      Permanent Partial Disability

Baccam first argues the district court erred in affirming the commissioner's award of PPD. He contends the deputy's decision awarding him 6.6 weeks of PPD is not supported by substantial evidence, claiming the deputy failed to factor in his permanent leg impairments of tingling, burning, itching, and the failure to return to its pre-injury condition. Baccam contends these impairments must be considered despite no rating methodology in the AMA Guide and argues that, though these concerns are subjective and unratable, they can be quantified. He analogizes the deputy's task to that of juries who must award damages in personal-injury cases for the subjective issues of pain and suffering, mental stress, anxiety, and loss of consortium. Further, Baccam claims the deputy erroneously weighed the medical opinions of the medical providers before the hearing, failing to give his testimony about his impairments the appropriate consideration, despite the deputy's own finding that his testimony was credible. Baccam also claims the deputy erroneously interpreted "loss" under Iowa Code section 85.34(2)(o) (2013) which provides compensation for the loss of a leg. Baccam further argues the three percent PPD compensation award was "the product of reasoning that is so illogical

as to render it wholly irrational, illogical, and/or [a] wholly unjustifiable application of law to fact" and is "otherwise unreasonable, arbitrary, . . . [or] capricious."

"We are bound by the agency's factual determinations if supported by 'substantial evidence in the record before the court when that record is viewed as a whole.'" *Hedberg*, 873 N.W.2d at 280 (quoting Iowa Code § 17A.19(10)(f)). "Substantial evidence is 'the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance.'" *Mike Brooks, Inc. v. House*, 843 N.W.2d 885, 889 (Iowa 2014) (quoting Iowa Code § 17A.19(10)(f)(1)). "'Evidence is not insubstantial merely because different conclusions may be drawn from the evidence.' On appeal, our task 'is not to determine whether the evidence supports a different finding; rather, our task is to determine whether substantial evidence . . . supports the findings actually made.'" *Id.* (ellipses in original) (quoting *Cedar Rapids Cmty. Sch. Dist. v. Pease*, 807 N.W.2d 839, 845 (Iowa 2011)). Further, "[a]n agency's action is 'arbitrary' or 'capricious' when it is taken without regard to the law or facts of the case. . . . Agency action is 'unreasonable' when it is 'clearly against reason and evidence.'" *Dico, Inc. v. Iowa Emp't Appeal Bd.*, 576 N.W.2d 352, 355 (Iowa 1998) (ellipses in original) (quoting *Soo Line R.R. v. Iowa Dep't of Transp.*, 521 N.W.2d 685, 688–89 (Iowa 1994)).

"[T]he commissioner, as fact finder, is responsible for determining the weight to be given expert testimony. The commissioner is free to accept or reject an expert's opinion in whole or in part, particularly when relying on a conflicting expert opinion." *Pease*, 807 N.W.2d at 850. In this case, the deputy relied on the

opinion of Dr. Taylor to reach the three percent PPD award. The deputy highlighted that Baccam's own testimony supported Dr. Taylor's opinion and that Dr. Taylor's opinion was the result of both a detailed examination of Baccam and consideration of Baccam's statements about his abilities and impairments. The deputy found that, "Due to the specificity provided by Dr. Taylor in explaining the rationale behind and justification for the [three] percent impairment rating, it is determined the opinion of Dr. Taylor is entitled to the greater weight amongst the medical providers." The deputy recognized the flaws in the assessments from the other doctors by identifying that Dr. Bingham did not examine Baccam at the time of issuing his PPD rating and Dr. Kimelman did not give as detailed and specific explanation as to how he arrived at his impairment rating. Baccam argues the three percent impairment rating is insufficient. The deputy identified Baccam's argument "rest[ed] in large part upon his belief [that] his left leg was in superior condition to the average individual's at time of the work injury." Ultimately, the deputy determined Baccam provided no evidence to support his assertion of superiority other than his testimony and would not assign a higher impairment level without more convincing evidence.

Based on the record before us, we find the deputy gave due consideration to Baccam's testimony about his impairments and the deputy's findings and conclusions are supported by substantial evidence. Further, we find the deputy's application of the law to the facts was not irrational, illogical, or wholly unjustifiable.

B. Penalty Benefits

Baccam next claims the district court erred in remanding his case to the commissioner with instructions to explain its finding that Sentry conducted a

reasonable investigation or reevaluate his award for PPD benefits. Baccam contends the court should have remanded the case with the instruction to reevaluate the award for penalty benefits only.

The deputy found Baccam was entitled to penalty benefits on his TPD benefits because no benefits had been paid and there was no evidence to establish a reasonable or probable cause or excuse for the delay in payment. The deputy highlighted the lack of a contemporaneous conveyance to Baccam to explain the delay or denial. As to penalty benefits on the PPD benefit award, the deputy awarded Baccam 6.6 weeks of benefits but only 2.2 weeks of benefits had been paid at the time of the decision. Thus the burden shifted to Sentry to prove a reasonable or probable cause or excuse for the delay or denial. The deputy found Dr. Kimelman issued his PPD rating on August 9, 2013 and Baccam was issued a check accompanied with a letter explaining the payment, and so determined Sentry had proven a reasonable investigation and the results which formed the basis of the payment was provided to Baccam within six days. Based upon these findings, the deputy denied penalty benefits on Baccam's PPD award.

The appeal deputy largely affirmed the deputy, finding that Sentry was engaged in a reasonable investigation between July 8, 2012, the time Baccam's entitlement to TPD ended, and when Dr. Kimelman gave his impairment rating on August 9, 2013. However, no contemporaneous communication was sent to Baccam to explain the delay. Therefore, the appeal deputy determined Baccam was entitled to an additional penalty benefit of five percent plus interest.

The district court agreed with Baccam that neither the deputy nor appeal deputy made a specific finding of fact to explain the finding that Sentry had

requested Dr. Kimelman's opinion or if such a request was made, the delay was attributable to Dr. Kimelman. Because of the lack of explanation for these findings, the district court remanded the issue to the commissioner with instructions to explain its finding that Sentry conducted a reasonable investigation and requested Dr. Kimelman's opinion or to reevaluate the award for penalty benefits on the PPD award.

Iowa Code section 86.13(4)(a) authorizes the commissioner to award additional benefits when there is "a denial, a delay in payment, or a termination of benefits occurs without reasonable or probable cause or excuse known to the employer or insurance carrier at the time of the denial, delay in payment, or termination of benefits." "[S]ection 86.13 is applicable when payment of compensation is not timely made or when the full amount of compensation is not paid." *Robbennolt v. Snap-On Tools Corp.*, 555 N.W.2d 229, 237 (Iowa 1996).

> The workers' compensation commissioner shall award benefits under this subsection if the commissioner finds both of the following facts:
> (1) The employee has demonstrated a denial, delay in payment, or termination of benefits.
> (2) The employer has failed to prove a reasonable or probable cause or excuse for the denial, delay in payment, or termination of benefits.

Iowa Code § 86.13(4)(b). In order to be considered a reasonable or probable cause or excuse, the excuse must satisfy the following criteria:

> (1) The excuse was preceded by a reasonable investigation and evaluation by the employer or insurance carrier into whether benefits were owed to the employee.
> (2) The results of the reasonable investigation and evaluation were the actual basis upon which the employer or insurance carrier contemporaneously relied to deny, delay payment of, or terminate benefits.

> (3) The employer or insurance carrier contemporaneously conveyed the basis for the denial, delay in payment, or termination of benefits to the employee at the time of the denial, delay, or termination of benefits.

*Id.* § 86.13(4)(c). "[W]e review the commissioner's statutory interpretation for correction of errors at law." *Pettengill v. Am. Blue Ribbon Holdings, LLC*, 875 N.W.2d 740, 745 (Iowa Ct. App. 2015), as amended (Feb. 16, 2016); *see also* Iowa Code § 17A.19(10)(c).

During oral arguments, while arguing that no penalty benefits were appropriate, Sentry conceded it no longer objected to the five percent ruling by the appeal deputy. On our review, we agree with the appeal deputy's interpretation and application of section 86.13 in determining penalty benefits and conclude the appeal deputy did not err in finding Baccam should be awarded penalty benefits of five percent. We therefore reverse the district court's decision on this issue.

C.      Transcript and Court Costs

Lastly, Baccam contends the district court erred in failing to reverse the deputy commissioner's denial of his request to tax transcript costs to Sentry and by taxing him with three-quarters of the court costs. He contends all other costs he requested were taxed but the deputy failed to exercise her discretion and consider his relative success on the merits by selectively taxing the transcript cost to him.

"[D]etermining the appropriate taxation of costs is a matter specifically delegated by the legislature to the discretion of the agency." *John Deere Dubuque Works v. Caven*, 804 N.W.2d 297, 300 (Iowa Ct. App. 2011). "Iowa Code section 86.40, along with its implementing rule, Iowa Administrative Code rule 876-4.33,

generally provides the framework for awarding all costs incurred in the hearing." *Des Moines Area Reg'l Transit Auth. v. Young*, 867 N.W.2d 839, 851 (Iowa 2015) (Appel, J., dissenting). Those costs include "transcription costs when appropriate," Iowa Admin. Code r. 876-4.33(86), and "shall be taxed in the discretion of the commissioner." Iowa Code § 86.40. Further, "[t]he taxation of costs on judicial review shall be in the discretion of the court." *Id.* § 86.32 (2017). Therefore, we "review the district court and [workers'] commissioner's action in taxing costs for an abuse of discretion." *Robbennolt*, 555 N.W.2d at 238; *see also* Iowa Code §§ 86.32, .40. "An abuse of discretion occurs when a court's exercise of discretion is clearly erroneous." *Solland v. Second Injury Fund of Iowa*, 786 N.W.2d 248, 249 (Iowa 2010). "When reviewing the taxation of costs, we consider the success of the applicant on the issues raised on appeal as shown by the record." *Robbennolt*, 555 N.W.2d at 238.

After the November 17, 2014 hearing but before the deputy filed her findings, Baccam, by a post-hearing brief, requested the taxation of the cost of the hearing transcript. The deputy denied this request as "inappropriate, as the [deputy] did not request the submission of the hearing transcript." The deputy further found Baccam "chose to request the transcript and submitted it . . . without request; therefore [Baccam] shall bear the cost of the hearing transcript." On appeal, the appeal deputy failed to specifically address the issue of the transcript cost in her decision or ruling on rehearing. The district court found no abuse of discretion.

Iowa Administrative Code rule 876-4.30(86) provides, "When an appeal to or review on motion of the commissioner is taken . . . a transcript of the proceedings

before the workers' compensation commissioner shall be filed with the workers' compensation commissioner" and "[t]he appealing party shall bear the initial cost of transcription on appeal." *Accord* Iowa Code § 86.24(4) (2013) ("A transcript of a contested case proceeding shall be provided to the workers' compensation commissioner by an appealing party at the party's cost."). While Baccam was required to provide the hearing transcript with the commissioner once he appealed the initial arbitration decision, he was not required to provide one to the deputy commissioner before she filed her initial arbitration decision. We therefore find the deputy did not abuse her discretion in failing to tax the costs of the hearing transcript in the initial decision.

On appeal, the appeal deputy repeated the same taxation of costs but did not specifically address the issue of the transcript cost. When denying Baccam's rehearing application which requested the appeal deputy to specifically address the transcript issue, the appeal deputy stated "[t]he matters asserted in the motion were considered when the appeal was decided." Based upon the record, we find no abuse of discretion. Further, because Baccam "was only successful on a fraction of [his] . . . issues at the district court level, we find the district court did not abuse its discretion in its assessment of costs." *Weishaar v. Snap-On Tools Corp.*, 506 N.W.2d 786, 791 (Iowa Ct. App. 1993). Costs on appeal are taxed to Baccam.

## IV. Conclusion

We find substantial evidence supports the award of PPD benefits. We agree with the appeal deputy's interpretation and application of section 86.13 in determining penalty benefits. We find no abuse of discretion in the allocation of costs. Therefore, we affirm those parts of the district court judgment that affirm the

commissioner's ruling on Baccam's PPD benefits and taxation of transcript costs. We reverse that part of the district court judgment remanding the case to the workers' compensation commissioner with directions. Costs on appeal are taxed to Baccam.

**AFFIRMED IN PART AND REVERSED IN PART.**