## IN THE COURT OF APPEALS OF IOWA

No. 18-0911
Filed May 15, 2019

IN RE THE MARRIAGE OF TIMOTHY MICHAEL RAMUNDO
AND LISA MARY RAMUNDO

Upon the Petition of
TIMOTHY MICHAEL RAMUNDO,
        Petitioner-Appellant,

And Concerning
LISA MARY RAMUNDO,
        Respondent-Appellee.

_____

        Appeal from the Iowa District Court for Linn County, Mary E. Chicchelly,

Judge.


        Former spouses appeal and cross-appeal the district court's reduction of

the husband's alimony payments. **AFFIRMED ON APPEAL AND CROSS-**

**APPEAL.**


        Allison M. Heffern and Kerry A. Finley of Shuttleworth & Ingersoll, PLC,

Cedar Rapids, for appellant.

        Mark D. Fisher and Frank J. Nidey of Nidey Erdahl Fisher Pilkington &

Meier, PLC, Cedar Rapids, for appellee.


        Considered by Potterfield, P.J., and Tabor and Bower, JJ.

**TABOR, Judge.**

Timothy and Lisa Ramundo both challenge a modification to their 2017 dissolution decree decreasing Timothy's monthly spousal support obligation from $4000 to $2750. Timothy asserts changes in the parties' incomes—his decrease and her increase—warrant a total elimination or a more substantial reduction in his alimony payments to Lisa. Lisa cross-appeals, arguing the district court erred in finding her salary increase was a substantial change in circumstances and in reducing the payments. Both parties request appellate attorney fees.

Finding Lisa's move to full-time employment (and the tripling of her salary) constitutes a substantial change in circumstances, and considering other relevant factors, we affirm the district court's decision to reduce the support obligation.

## I.      Facts and Prior Proceedings

Timothy and Lisa married in 1992 and divorced after twenty-four years of marriage. At the time of the divorce in 2017, Timothy was fifty-one and Lisa was forty-eight years old. They have three children. Lisa is a civil engineer but, for most of the marriage, she stayed home with the children. Timothy's work in financial services took the family to several locations across the country: New York, North Carolina, Florida, and then Iowa.

While in Iowa, the parties filed for dissolution of their marriage. Before the decree issued, Timothy informed Lisa and the district court he would soon lose his job due to a company merger. Timothy committed to seeking comparable work but predicted his salary would be substantially lower. At the time of the dissolution, his future salary was unknown. Lisa moved to Slingerlands, New York, and worked part-time as a civil engineer, earning around $32,000.

Before the dissolution went to trial, Timothy and Lisa reached an agreement on all aspects of the property division, child custody, and awards of child and spousal support. The court approved and adopted all terms of their stipulation. The parties agreed to joint custody of the children, with Lisa retaining physical care and Timothy exercising visitation. Timothy agreed to pay Lisa $4000 per month in child support with graduated reductions as the children left Lisa's home. The parties acknowledged the amount was an "upward deviation" from the Iowa Child Support Guidelines. The departure related to Lisa's move from Iowa to upstate New York where "the cost of living is substantially higher" and was "part of the parties' overall settlement of property and support issues."

Timothy also agreed to pay Lisa spousal support of $4000 per month until the parties' middle child graduated from high school. Then Timothy would pay $3000 per month until the youngest child graduated from high school, at which point the obligation would terminate. Thus, Lisa would receive some amount of spousal support until 2028 when she reaches fifty-eight years old.

As for the property division, both parties came out of the marriage with assets of about $600,000.

At the close of the stipulation, the parties stated, "This Agreement constitutes the entire understanding of Timothy and Lisa and there have been no representations or warranties other than those expressly herein set forth."

The court dissolved the Ramundos' marriage in January 2017. Five months later, Timothy filed for modification: he had been laid off, his new job required relocation to Charlotte, North Carolina, and it paid less than his old job. Timothy estimated his new salary with bonuses at $206,004. Also since the divorce,

Timothy married his girlfriend, Kendis, and they purchased a house in Charlotte for $1,340,000. At the hearing, Timothy described the house as an investment and explained the space was necessary to accommodate his three children and his new wife's two children. He and Kendis split the household expenses equally.

Meanwhile, Lisa moved with the children to upstate New York where she bought a $325,000 house she described as a "fixer-upper." She also began working full time. In May 2017, she was promoted to commissioner of public works for Albany County, New York; now earning a salary of $97,000. At the modification hearing, Lisa testified she sought full-time work because, absent more income, she was unable to maintain the same standard of living as before the dissolution. But, after her promotion, Lisa cut back to half-time work due to various medical ailments brought on by stress. She expected to eventually return to full-time status. Timothy sought modification of the alimony award based on his salary going down and Lisa's income going up.[1]

After an April 2018 hearing, the district court granted the modification petition. The court concluded Timothy's reduced salary did not constitute a substantial change in circumstances because it had been contemplated before the dissolution. But the court decided Lisa's increased salary was not contemplated and, therefore, *did* constitute a substantial change in circumstances. Comparing the parties' relative financial positions, the court reduced Timothy's payment by $1250 per month until its termination in 2028. Both parties appeal.

---

[1] Although Timothy also moved to modify his child support obligation, through pre-trial motions, that aspect of his petition was dismissed: the children no longer lived in Iowa and the court found it lacked jurisdiction over them.

## II.    Standard of Review

Petitions to modify the spousal support provisions of a decree lie in equity. *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015).  So our review is de novo.  *Id.*; Iowa R. App. P. 6.907.  De novo review means "[w]e examine the entire record and adjudicate anew" the issues presented.  *In re Marriage of Beecher*, 582 N.W.2d 510, 512–13 (Iowa 1998).  Although they are not binding, we give weight to the district court's findings of fact, especially when considering witness credibility.  *Id.*

## III.    Analysis

### A.  Spousal Support Obligation

Timothy contends the reduction in his salary was a substantial change in circumstances and the court should have either eliminated his alimony obligation or reduced the monthly payments by more than $1250.  In response, Lisa disputes the court's conclusion her increased earnings qualified as a substantial change in circumstances, and argues Timothy's alimony obligation should remain the same because she is still not able to achieve the standard of living the parties enjoyed during their marriage.

A decree's spousal support provision is "normally final as to the circumstances existing at the time."  *In re Marriage of Sisson*, 843 N.W.2d 866, 870 (Iowa 2014) (citing *Mears v. Mears*, 213 N.W.2d 511, 515 (Iowa 1973)).  But courts may modify support orders if a party demonstrates a substantial change in circumstances.  Iowa Code § 598.21C(1) (2017).  To determine if circumstances have substantially changed, courts consider all relevant factors, including changes in employment, earning capacity, income, or other resources of a party; changes

in a party's medical expenses; changes to the physical, mental or emotional health of a party; change in the residence; remarriage; and possible support of a party by another person. *Id.* § 598.21C(1)(a)–(*l*); *Sisson*, 843 N.W.2d at 870. "[T]he changed circumstances must be material and substantial, essentially permanent, and not within the contemplation of the court at the time of the [original] decree." *Sisson*, 843 N.W.2d at 870–71 (citing *Mears*, 213 N.W.2d at 515).

1. *A substantial change in circumstances.* Timothy first argues the court should have concluded his salary reduction constituted a substantial change in circumstances. Timothy focuses unnecessarily on this issue. The district court recognized Timothy was earning less after his layoff, but the court contemplated that potential income reduction when entering the decree.[2] Another obstacle to Timothy is his stipulation to the original amount of spousal support, even with the knowledge he faced an impending reduction in salary.[3]

---

[2] At the pretrial conference for the dissolution trial, Timothy's counsel said he was withdrawing a motion for a late witness to present evidence about Timothy's imminent layoff because Lisa resisted it. Counsel stated,

> Our withdrawal of that motion is done with the understanding, that if there is a change in employment for the Petitioner in the future, that Respondent will not be asserting that that was something that was known at the time of this trial, and so we are just leaving that for another day when those facts are more certain, your Honor.

But neither the court nor Lisa agreed a modification could rest on Timothy's job loss. Such a known issue will not constitute a substantial change in circumstances justifying modification. *See Sisson*, 843 N.W.2d at 870–71 (citing *Mears*, 213 N.W.2d at 515).

[3] On appeal the parties explain the court calculated Timothy's support obligations based on an annual salary of $308,000—derived from an average of the previous years. But that calculation is not clear from the record. Timothy testified the parties met without counsel after the first day of trial and agreed the amount of support payments, which the court approved and incorporated into the decree in its entirety. The court properly sustained an objection to Timothy testifying about the intent of the parties in discussing the stipulation.

Nevertheless, it makes no difference that the district court did not view Timothy's expected salary reduction as a substantial change in circumstances, because it granted the modification based on Lisa's salary increase.[4] The court then considered *all* evidence of the parties' relative financial positions at the time of the modification—including the decrease in Timothy's earnings—and ruled accordingly. The court did not disregard Timothy's salary reduction, it was just not the entrée to the modification proceedings.

In her cross-appeal, Lisa contends the increase in her income should not have served as a basis to modify. She argues her move to full-time employment was recent and it was not clear she could maintain it; and she needed her increased income to cover the higher cost of living in her new location, to plan for retirement, and to purchase health insurance—all because the original spousal support award was insufficient.

Like the district court, we conclude the significant increase in Lisa's income called for modification of the spousal support award. *Id.* When the decree issued, Lisa was earning about $33,000 per year. At the time of modification, Lisa's salary jumped to three times that amount. The change was not contemplated because Lisa did not indicate at the dissolution trial a plan to pursue full-time employment as a civil engineer.

Lisa asserts the change is not permanent because stress-related health problems may impede her ability to maintain full-time employment. At the

---

[4] On appeal, Lisa argues, "The district court correctly declined to consider Timothy's decrease in income." It is not that the district court declined to consider it all—the district court only found it did not constitute a substantial change in circumstances.

modification hearing, Lisa testified to suffering from anxiety, forgetfulness, acne, shingles, and hair loss. The district court had "no doubt that Lisa experiences the stress of which she complains." But Lisa repeated several times on the witness stand that she intended to return to full-time work. As of the modification trial, the change in her salary was "substantial" and "essentially permanent." *See id.* We agree with the district court's conclusion Lisa's increased income warranted granting Timothy's motion to modify the spousal support award.

*2. Modified Payments.* The district court's decision to reduce Timothy's monthly spousal support from $4000 to $2750 draws fire from both parties. Timothy contends the court should have ordered a greater reduction or eliminated the obligation altogether. Lisa argues the court should not have reduced the payments at all.[5]

According to updated financial affidavits, Timothy's current salary and bonuses total $206,004, for a monthly net income of $13,415.[6] Timothy lists monthly expenses of $13,081.56, including his child support payment of $4000.

Lisa's salary is $96,305.88 per year, with a net income of $6156.27 per month. She listed monthly expenses of $13,223.56. The district court found Lisa's

---

[5] Because the parties did not memorialize their reasoning when they reached the stipulation incorporated into the decree, the modification court had limited ability to pinpoint the purpose of the spousal support award as either traditional or rehabilitative. Ultimately, the court concluded the award had elements of both traditional and rehabilitative alimony, but was largely traditional—reflecting the parties' long marriage and their agreement Lisa would forego her career to stay home with the children. The court concluded Lisa's increased income did not eliminate the need for traditional alimony to sustain a standard of living comparable to what the parties enjoyed during the marriage.
[6] At the modification hearing, Timothy explained his salary in 2018 was $196,000—reflecting base pay of $178,500, plus a $17,500 bonus. But his employer's compensation summary statement indicates in 2017, he earned base pay of $175,000, plus $27,500 in various bonuses. Thus, his 2017 earnings were $202,500, which comports with his financial affidavit dated April 2018. He also anticipated making $245,000 the next year.

expenses to be "reasonable and consistent with her attempt to maintain her pre-divorce standard of living." But noting several calculation errors, the court determined Lisa's expenses were approximately $11,500 per month.[7]

Timothy argues Lisa is now able to support herself and does not need alimony to maintain her standard of living. We disagree. *See In re Marriage of Gust*, 858 N.W.2d 402, 412 (Iowa 2015) ("[A]n award of traditional spousal support is normally payable until the death of either party, the payee's remarriage, or until the dependent is capable of self-support *at the lifestyle to which the party was accustomed during the marriage*." (emphasis added)). Both parties took comparable property in the decree.[8] With child support, Lisa's monthly income is $10,156.27. Based on her reasonable expenses, the court found,

> Lisa's current need for alimony amounts to $1,343.73 . . . . Adjusting slightly upward to account for the fact that Lisa's listed expenses do not reach the standard of living which she previously enjoyed during the course of the parties' marriage, the Court finds that the appropriate level of alimony herein is $2,750 per month in order to adequately cover Lisa's needs.

We agree $2750 per month will allow Lisa to maintain a comparable standard of living and provide a small boost for her retirement savings. We also agree Timothy is able to pay that amount. In January 2017, Timothy claimed expenses of $6855 per month; in April 2018, he listed expenses of $9081.56 per

---

[7] Lisa listed as an expense the $1500 she pays in taxes on the alimony payment. The court set that aside. The court also noted a duplicated expense.

[8] Lisa contends she is in a substantially worse position with respect to retirement savings because she left the workforce to care for their children. She is making extra payments on her mortgage and buying into the New York State retirement plan to position herself to receive full retirement benefits. She also emphasizes the spousal support terminates when she is fifty-eight, and, after that, she will need to continue saving for retirement on her own. We note her concerns are offset by the fact the parties split the retirement accounts relatively evenly in the decree.

month. He and Kendis purchased a house for more than $1,000,000, and they evenly split household expenses.[9] As the district court observed, Timothy opted to take on greater expenses, even after his income decreased. Still, his annual salary of roughly $200,000 remains substantially higher than Lisa's income. The record shows Timothy can afford the modified alimony while maintaining his own standard of living.[10] Accordingly, we affirm the modification.

### B. Appellate Attorney Fees

In modification proceedings, the district court "may award attorney fees to the prevailing party" in a reasonable amount. Iowa Code § 598.36. That provision also gives us discretion to award appellate attorney fees. *In re Marriage of Michael*, 839 N.W.2d 630, 639 (Iowa 2013). We consider the parties' respective abilities to pay, whether a party resisting the modification petition was successful, and whether a party was obliged to defend the district court's decision on appeal. *Id.* After considering these factors and the affidavits of attorney fees, we order Timothy to pay Lisa $7500 in appellate attorney fees. Timothy's salary is substantially higher, and he is able to share living expenses with his new spouse. Thus, he is better able to pay the attorney fees.

### AFFIRMED ON APPEAL AND CROSS-APPEAL.

---

[9] Timothy testified Kendis earns more than $160,000 per year and covers expenses related to her children.

[10] In his reply brief, Timothy underscores the fact he pays child support in excess of the Iowa guidelines. That fact is of no consequence in this appeal for two reasons. First, we do not address issues first mentioned in a reply brief. *See Young v. Gregg*, 480 N.W.2d 75, 78 (Iowa 1992). Second, Timothy stipulated to the higher child support payments before the district court entered them into the decree.