# IN THE COURT OF APPEALS OF IOWA

No. 19-1998
Filed June 17, 2020

**IN RE THE MARRIAGE OF KENNETH DUNAWAY**
**AND MEGAN DUNAWAY**

**Upon the Petition of**
**KENNETH DUNAWAY,**
        Petitioner-Appellee,

**And Concerning**
**MEGAN DUNAWAY,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Scott County, John Telleen, Judge.


        Megan Dunaway appeals an order granting a motion to enforce settlement.

**AFFIRMED AND REMANDED.**



        Maria K. Pauly of Maria K. Pauly Law Firm, P.C., Davenport, for appellant.

        Jennie Clausen and Ryan Beckenbaugh of H.J. Dane Law Office, Davenport, for appellee.



        Considered by Vaitheswaran, P.J., and Mullins and Ahlers, JJ.

**MULLINS, Judge.**

In July 2016, a decree was entered dissolving the marriage of Kenneth and Megan Dunaway. The parties were granted joint legal custody of their two children—X.D., born in 2005; and S.D., born in 2008—with physical care to Megan and visitation to Kenneth. In March 2017, Kenneth filed a petition for modification of the child custody provisions of the decree. In July, an order was entered setting the matter for settlement conference. The record indicates the ensuing settlement conference in January 2018 was unfruitful. In March, the court reset the matter for another settlement conference in October and, if necessary, trial on December 4. The settlement conference order entered after the conference in October noted the matter "should settle."

In February 2019, the court entered an order for hearing for dismissal for lack of prosecution. In March, Kenneth filed a motion to dismiss that conference and for an order setting a trial scheduling conference. The court granted the motion and ordered a trial scheduling conference to take place in late March. The court, apparently after that conference, set the matter for a settlement conference in late September, and then trial in October. The order following the September conference noted: "There may be a motion to enforce a previously signed settlement agreement."

Kenneth filed such a motion in early October. Therein, Kenneth stated the parties entered into a stipulation and settlement agreement the eve of the December 4, 2018 trial date, disposing of all issues, which was signed by all parties, including counsel for the child support recovery unit (CSRU). However, the motion noted Kenneth's counsel was never provided a signed copy of the

agreement, and Megan changed her mind after the agreement was executed and refused to allow her counsel to file the agreement with the court or provide the executed agreement to Kenneth's counsel. The agreement attached to the motion was signed by Kenneth, his counsel, and counsel for the CSRU. Kenneth requested the court to enforce the executed agreement.[1] Megan resisted, arguing no agreement was ever reached or executed.

The matter proceeded to a hearing. During her testimony, Megan was presented with a copy of the agreement that was attached to Kenneth's motion to enforce settlement. Megan testified she received a copy of the agreement on December 3, 2018 and signed it. She later testified she did not sign it, and the agreement attached to the motion and what she signed was not the final stipulation agreement. She then testified she signed "[t]he first copy that was sent which was later changed." And she testified she initialed every page. She later testified she "signed a draft conditionally." She agreed she did not appear for trial on December 4 because it was removed from the court schedule. Significantly, Megan was unable to elaborate what was different between the agreement attached to the motion and the one that she signed.

The exhibits show that at 2:41 p.m. on December 3, Kenneth's counsel sent Megan's counsel a stipulation agreement with the CSRU counsel's revisions. The email noted Kenneth was reviewing the agreement at that time as well, thus

---

[1] The attached agreement entitled the parents to joint legal custody and shared physical care of the children. The agreement provided an alternating weekly parenting-time schedule as to X.D. As to S.D., Kenneth would be entitled to parenting time every other Wednesday overnight and forty weekends out of the year.

indicating he had yet to sign it. Then, at 4:04 p.m. Kenneth's counsel sent Megan's counsel a copy of the agreement which had been executed by Kenneth, his counsel, and CSRU counsel. Then, the morning of December 4, some emails were exchanged between the parties' counsel, but the substance of the attachments to those emails is unclear.

Following the presentation of evidence, the court ruled from the bench. The court found Megan's testimony inconsistent and not credible and concluded Megan executed the settlement agreement, but somehow it disappeared thereafter. The court noted the matter would not have been removed from the trial calendar unless it was settled. The court granted the motion to enforce the settlement agreement and entered a written order to that effect. Megan now appeals, challenging the district court's grant of the motion to enforce.

Actions to modify a decree of dissolution of marriage are equitable proceedings, which we review de novo. Iowa R. App. P. 6.907; *In re Marriage of Kupferschmidt*, 705 N.W.2d 327, 331 (Iowa Ct. App. 2005). We give weight to the factual findings of the district court, especially when considering the credibility of witnesses, but we are not bound by them. Iowa R. App. P. 6.904(3)(g).

Megan cites only one of this court's opinions in support of her position where we found insufficient evidence a settlement agreement was made. *See In re Marriage of Treimer*, No. 07-1746, 2008 WL 2039602, at *4 (Iowa Ct. App. May 14, 2008). In that case, there was no signed written agreement, and the evidence only suggested a proposed agreement was floated from one party to the other. *See id.* But here, the evidence shows Kenneth's counsel sent a final agreement, signed

by Kenneth, his counsel, and CSRU counsel, to Megan.[2]  Megan expressly testified she signed the agreement containing the signatures of all other parties, the one that was attached to Kenneth's motion to enforce, and also initialed each page.  The district court found her backtracking from that testimony not credible, an assessment we now adopt as our own.  Then, after executing the agreement, Megan changed her mind, the reasons for which remain unknown, and her counsel refused to provide the executed copy or file it with the court.  As a result, Kenneth pursued other settlement options in the coming months.  When no progress was made, he ultimately decided to pursue enforcement of the agreement.[3]  We agree with the district court that this case is distinguishable from *Treimer*.  Here, the agreement produced by Kenneth, coupled with Megan's testimony she signed it, amounts to sufficient evidence an agreement was reached.

Next, Megan complains the court made no finding as to whether the agreement was fair and equitable.  *See In re Marriage of Dawson*, No. 01-1088, 2002 WL 531532, at *2–3 (Iowa Ct. App. Mar. 27, 2002).  But she fails to explain

---

[2] Megan claims the 2:41 p.m. email on December 3 clearly shows counsel for the CSRU still had revisions to make to the agreement.  We disagree.  The title of the attachment to that email clearly indicates that version included CSRU counsel's revisions.  Megan goes on to claim the agreement attached to the 4:04 p.m. email included additional revisions from CSRU counsel.  We again disagree.  Both emails indicated the attachment was the "Revised Stipulation."  The only difference as to the one attached to the second email is that the agreement was "signed by us and [CSRU counsel]."

She also alleges she made changes to the agreement and placed her initials next to them.  However, no evidence was produced to that effect, and she was unable to testify how those changes modified the substance of the agreement or amounted to a counteroffer.

[3] Megan stresses the fact that no motion to enforce was filed for several months and other negotiations ensued.  We find those circumstances irrelevant as to whether an agreement was previously reached, and Kenneth's efforts to resolve the ensuing dispute amicably should not be used against him.

how it was inequitable. And, rather than raise that complaint for the first time on appeal, the proper procedure to preserve error on this issue was to file a motion raising the district court's failure to decide the issue prior to appealing. *See Lamasters v. State*, 821 N.W.2d 856, 863 (Iowa 2012). Megan did not do so, and error is thus not preserved. Even if error had been preserved, we are without an adequate factual record to determine whether the settlement agreement is fair and equitable. It would be improvident for us to speculate on the matter, and we decline to do so. *See In re F.W.S.*, 698 N.W.2d 134, 135–36 (Iowa 2005).

As to Megan's remaining arguments and conclusory statements that are not supported by citations to legal authority, we deem them waived. *See* Iowa R. App. P. 6.903(2)(g)(3). We do not consider any of the arguments raised by Megan for the first time in her reply brief. *See Young v. Gregg*, 480 N.W.2d 75, 78 (Iowa 1996). We affirm the district court order granting Kenneth's motion to enforce settlement. We deny Megan's request for attorney fees. *See* Iowa Code § 598.36 (2017). As to Kenneth's request for appellate attorney fees, we conclude he *may* be entitled to an award for having to defend himself on appeal. *See id.*; *In re Marriage of Hoffman*, 891 N.W.2d 849, 852 (Iowa 2016). However, because we have no information concerning Kenneth's need for the award, Megan's ability to pay, or the reasonableness of Kenneth's request, we remand the matter to the district court for development of a record and the district court's determination of Kenneth's appellate attorney fee award, if any. *See In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007); *Markey v. Carney*, 705 N.W.2d 13, 26 (Iowa 2005).

**AFFIRMED AND REMANDED.**