# IN THE COURT OF APPEALS OF IOWA

No. 20-0772
Filed February 17, 2021

**IN THE INTEREST OF D.W., R.W., and M.W.,**
**Minor Children,**

**C.W., Father,**
 Petitioner-Appellee,

**M.W., Mother,**
 Respondent-Appellant.

_____

Appeal from the Iowa District Court for Cass County, Jennifer A. Benson,

District Associate Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Amanda Heims, Council Bluffs, for appellant mother.

Alexander E. Wonio and Tyler R. Smith of Hansen, McClintock & Riley, Des

Moines, for appellee father.

Donna K. Bothwell, Logan, attorney and guardian ad litem for minor

children.

Considered by Mullins, P.J., and May and Schumacher, JJ.

**MAY, Judge.**

A mother appeals the termination of her parental rights to her children, D.W.; R.W.; and M.W.,[1] pursuant to Iowa Code section 600A.8(3)(b) (2019). The mother argues the juvenile court should not have allowed the father to present certain witnesses or submit exhibits because the father failed to comply with Iowa Rule of Civil Procedure 1.500(3)(b). The mother also argues the juvenile court should not have taken judicial notice of prior child-in-need-of-assistance (CINA) proceedings involving this family sua sponte. She contends termination was not statutorily authorized because she did not abandon the children. And she argues termination is not in the children's best interests. We affirm.

**I. Background Facts**

The mother and father divorced in 2014. Following the dissolution of their marriage, the parents had joint legal custody and joint physical care of their children. During that time, the mother began using methamphetamine. As a result, the Iowa Department of Human Services became involved with the family. And the juvenile court adjudicated the children as CINA. Those proceedings ended when, with the agreement of the parties, the district court modified the physical care provisions of the dissolution decree.

Under the modified decree, the father received physical care of the children and the mother's visitation was subject to the father's discretion. The modified decree also did not require the mother to pay any child support.

---

[1] The parents also share a fourth child, who has reached the age of majority.

The father told the mother she would not be allowed in-person visitation with the children until she (1) obtained a substance-abuse evaluation and complied with its recommendation, (2) stopped engaging in "harassing" communication, and (3) resolved any pending criminal cases. The mother resolved her criminal cases, but she did not provide the father with a substance-abuse evaluation or evidence she complied with its recommendations.

The mother filed a modification action to change the physical care provisions of the decree. Then the father filed this action to terminate the mother's parental rights due to her abandonment of the children. The court found the mother abandoned the children because she failed to comply with the father's conditions for visitations and did not provide any financial support. The mother appeals.

## II. Scope and Standard of Review

Most evidentiary issues are reviewed for an abuse of discretion. *See In re E.H. III.*, 578 N.W.2d 243, 245 (Iowa 1998). "An abuse of discretion occurs when a district court exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *State v. Wilson*, 878 N.W.2d 203, 210–11 (Iowa 2016).

We review private termination proceedings de novo. *In re B.H.A.*, 938 N.W.2d 227, 232 (Iowa 2020). Private termination actions under chapter 600A are a two-step process. *Id.* First, the parent seeking termination must establish one of the statutory grounds for termination identified in section 600A.8. *Id.* Second, the parent seeking termination must show that termination is in the children's best interests. *Id.* Both steps must be established by clear and convincing evidence. *Id.*

## III. Discussion

### A. Notice of Witnesses and Exhibits

We first address the mother's claim that the father's presentation of evidence should have been limited to his own testimony because he failed to file his notice of witnesses and exhibits in accordance with Iowa Rule of Civil Procedure 1.500(3)(b). Rule 1.500(3)(b) provides in part: "Pretrial disclosures must be made at least 14 days before trial. This deadline may be modified by order of the court or stipulation of the parties, provided, however, that the parties may not stipulate to a pretrial disclosure deadline of less than 7 days before trial." Here, the father filed his notice of witnesses and exhibits the evening before the termination hearing began.[2]

The mother alerted the court to the issue of the father's untimely notice. With respect to exhibits, the court concluded, "As far as the admissibility of the exhibits, we will have to handle them on a case-by-case basis." And with respect to witnesses, the court decided,

> we should start with [the father], and I guess, see how long that takes us, and if we need to break for additional time for you to meet with your client, the court understands that it is of no fault of yours or your client's, and we'll just have to proceed as best we can.
> What I'm trying to say is I'll give you as much time as necessary to prepare for the additional two witnesses that have been listed. Is that acceptable?

Counsel for the mother replied, "Thank you, Your Honor. Yes."

---

[2] The juvenile court heard evidence over two days, November 26, 2019 and March 17, 2020. Only the father testified on November 26. So the mother had nearly four months to prepare for the two witnesses presented on March 17.

Given this exchange, we conclude the mother waived any objection to the witnesses identified on the father's notice of witnesses. And with respect to the exhibits offered by the father, the court made it clear they would be addressed on a case-by-case basis. But when the exhibits were offered, the mother never objected to an exhibit as untimely disclosed. So we find her challenge to the exhibits also waived.

### B. Judicial Notice

We turn next to the mother's claim that the juvenile court should not have taken judicial notice of the CINA proceedings absent agreement from the parties. For three reasons, we conclude we need not decide whether the juvenile court abused its discretion.

First, we question whether error was preserved. "As a general rule, an issue not presented in the juvenile court may not be raised for the first time on appeal." *In re K.W.*, No. 15-0790, 2015 WL 4642786, at *1 (Iowa Ct. App. Aug. 5, 2015) (citation omitted). And here, the mother failed to "lodge any objection alerting the juvenile court to" her concerns about judicial notice. *See id.* (citation omitted).

As the mother points out, though, the juvenile court first took judicial notice in its termination ruling. Prior to that ruling, the parties were unaware the court would take judicial notice. Even so, our rules still gave the mother an opportunity to object. Iowa Rule of Evidence 5.201(e) provides: "On timely request, a party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed. *If the court takes judicial notice before notifying a party*, the party, *on request*, is still entitled to be heard." (Emphasis added.) And yet the mother made no post-termination request "to be heard on the propriety of taking

judicial notice," *see* Iowa R. Evid. 5.201(e), either through an Iowa Rule of Civil Procedure 1.904(2) motion or otherwise.

Second, the mother does not explain how she was prejudiced by the court taking judicial notice of the CINA files. *See* Iowa R. Evid. 5.103(a) ("A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party . . . ."); *In re A.S.*, 743 N.W.2d 865, 869 (Iowa Ct. App. 2007) (noting "even the erroneous admission of this evidence will not result in reversal unless it is prejudicial"). The hearing transcript contains substantial testimony about the CINA proceedings. And the mother does not specify any prejudicial facts that (1) were contained in the CINA files but (2) were not also contained in the testimony. So the files themselves may well have been cumulative.

Finally, the central issues in this case are (1) whether there were statutory grounds for termination and, if so (2) whether termination is in the children's best interest. In conducting our de novo review of those issues, we have not relied on the CINA files. This leaves the judicial-notice issue moot.

### C. Statutory Grounds

The mother challenges the juvenile court's finding that she abandoned the children.

> "To abandon a minor child" means that a parent . . . rejects the duties imposed by the parent-child relationship, guardianship, or custodianship, which may be evinced by the person, while being able to do so, making no provision or making only a marginal effort to provide for the support of the child or to communicate with the child.

Iowa Code § 600A.2(20). And Iowa Code section 600A.8(3)(b) specifies:

If the child is six months of age or older when the termination hearing is held, a parent is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:

(1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.

(2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.

(3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

The mother argues she did not abandon the children because she was prevented from visiting the children by the father. We disagree. The father did not bar contact between the mother and the children full stop. Instead, he reasonably required the mother provide evidence that she was addressing her substance-abuse problems to ensure she was not under the influence of methamphetamine before she visited with the children. Given the mother's struggle with methamphetamine use, the father's condition was understandable. *See In re D.J.*, No. 17-0923, 2017 WL 4570488, at *4 (Iowa Ct. App. Oct. 11, 2017) (finding it reasonable for a parent to stop visitation between the children and the non-custodial parent when the non-custodial parent is abusing drugs and there is no evidence they are seeking treatment); *see also In re J.P.*, No. 19-1633, 2020 WL 110425, at *2 (Iowa Ct. App. Jan. 9, 2020) ("A parent's methamphetamine use, in itself, creates a dangerous environment for children."). Ultimately, the mother's lack of contact with the children rests on her shoulders because it is the result of her inability to meet the father's reasonable conditions. *See In re K.B.*, No. 14-

0849, 2015 WL 3884176, at *3 (Iowa Ct. App. June 24, 2015) (concluding a father abandoned his children because he failed to comply with a requirement to demonstrate his sobriety and the mother did not prevent contact). We do not think it is fair to say the father prevented contact between the mother and the children. Rather, *the mother's choice* of methamphetamine over treatment served as the barrier between her and the children.

Moreover, the mother has not provided any financial support for the children. But she testified that she was employed full-time and typically worked fifty-five to sixty hours per week at a rate of $14.20 per hour. So, although she was able to contribute something to the children's support, she provided nothing. And while we recognize the modified decree did not order her to pay the father child support, she is not relieved of her financial duties to the children wholesale. *See In re W.W.*, 826 N.W.2d 706, 710 (Iowa Ct. App. 2012) (finding a mother abandoned her children when she did not provide financial support but had no child-support obligation). The financial support required by "section 600A.8(3)(b) is not limited to court-ordered support payments." *Id.* The mother "had a parental obligation to support her children financially, whether or not the district court ordered it. As she did not, the children [are] deemed abandoned." *Id.* at 711.

So we agree with the juvenile the court that the mother abandoned the children.[3]

---

[3] In her reply brief, the mother argues she did not intend to abandon the children. But "[t]he subjective intent of a parent 'does not preclude a determination that the parent has abandoned the child.'" *In re O.G.*, No. 19-2116, 2020 WL 5650611, at *2 (Iowa Ct. App. Sept. 23, 2020) (quoting Iowa Code § 600A.8(3)(c)). Moreover, we note we do not consider arguments made for the first time in a reply brief. *See Young v. Gregg*, 480 N.W.2d 75, 78 (Iowa 1992).

### D. Best Interests

Finally, the mother argues termination is not in the children's best interests. In reaching a best-interests determination, we borrow from our best-interest framework outlined in chapter 232. *B.H.A.*, 938 N.W.2d at 232. That framework requires us to "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2). And we will not deprive children permanency after a petitioner has established grounds for termination in the hope that the deficient parent will someday become an adequate parent. *See B.H.A.*, 938 N.W.2d at 232.

The mother makes only a cursory assertion that termination is not in the children's best interests and contends we "should be alarmed that at no time were the children made aware of the action to terminate their mother's parental rights." We are much more alarmed by the mother's actions and their likely impact on the children. For example, the mother forged and cashed her adult child's check. And she exchanged terrible messages with M.W., then fourteen years old. The mother told M.W. to "fuck off." And when M.W. said "Good bye," the mother responded, "Good fucking bye [l]ittle bitch just like your sister [a]nd from now on [I] will treat you the same as her[.]. . . Forget you even know me. I'll do the same[.]"

While the mother's harmful acts have so far focused on her two oldest children, we believe in time her scorn is likely to reach all of the children. *See B.H.A.*, 938 N.W.2d at 233 (noting we look to a parent's past performance as an indicator of their likely future performance). Given the mother's harmful conduct

towards her children, we conclude the children's interests are best served by terminating the mother's parental rights.

**AFFIRMED.**